- KNIGHT *v.* THE INDIANA COAL AND IRON CO. ET AL.

LANDLORD AND TENANT.—*Estate at Will.*—A. and B. executed an instrument by which the right was granted to B. to enter upon the lands of A. to prospect for coal and other minerals, and, if found in sufficient quantities to satisfy B., the latter was given the privilege of mining and removing the same, he paying a certain price per ton to A.; and the right was granted to B. to erect all necessary buildings for mining purposes on said land; but the right was reserved to B. to abandon the agreement and remove such buildings at his pleasure.

*Held,* BUSKIRK and PETTIT, JJ., dissenting, that the instrument created an estate at will.

SAME.—It is an essential property of estates at will that they exist only by the will of both parties, and they may be determined at the will of either party.

From the Owen Circuit Court.

*G. A. Knight,* for appellant.

*D. E. Williamson, A. Daggy,* and *H. W. Chase,* for appellees.

DOWNEY, C. J.—This was an action by the appellant against the appellees, to quiet the title of the appellant to certain real estate. The suit was commenced in Clay county, but was, by change of venue, decided in Owen county. A demurrer to the complaint was filed by the defendants, which was sustained by the court, and final judgment was thereupon rendered for the defendants. The plaintiff, having excepted to this ruling, appealed, and has assigned the same as error in this court.

The question of principal importance in the case turns upon the proper construction of a certain writing, which was executed on the 18th day of September, 1865, by Arthur Helton, then the owner of the land, to Samuel Strain. Helton afterward conveyed the land to Gilfillen, and he conveyed to the plaintiff. Strain assigned the undivided three-fourths of the interest acquired by him under the instrument in question to William Risher, John M. Crawford, and Alexander Crawford, and Strain, Risher, and the Crawfords assigned the entire interest acquired by them, under the said instrument, to the Indiana Coal and Iron Company. Neither the original nor a copy of the assignment is filed with the complaint. The instrument in question is as follows:

1. "Agreement made and concluded this 18th day of September, in the year 1865, between Arthur Helton and Rachel A. Helton, of Jackson, in the county of Clay, in the State of Indiana, party of the first part, and Samuel Strain, of * * * in the county of Lawrence, in the State of Pennsylvania, party of the second part, as follows:

2. "The said party of the first part, for the consideration

of one dollar to them in hand paid, as well as the agree-- ments hereinafter mentioned, doth hereby bargain, sell, and convey unto the party of the second part, his heirs and assigns, all the mineral coal, limestone, iron ore, fire-clay, and oil, in, upon, and under the farm or tract of land in the town- ship of Jackson, in the county of Clay, and State of Indi- ana, bounded and described as follows:

3. " On the north by land of Michael McCullough; on the west by lands of William Muncy and heirs; on the south by lands of Arthur Helton, Sen.; on the east by lands of Arthur Helton, Sen., and Peter Muncy; containing in the whole sixty acres of land.

4. " Granting to the party of the second part, or his. assigns, as well as his and their laborers and workmen, the right to enter upon said lands at any time hereafter and search for coal, limestone, ore, fire-clay, and oils, and, when found, to remove the same from said lands, together with all the rights and privileges incident to the mining and. securing of said coal, limestone, ore, fire-clay, and oils, including the right of ingress and egress, and to dig, mine, explore, and occupy with such constructions and buildings. as may be necessary and useful for the full enjoyment of the advantages of said coal, limestone, ore, fire-clay, and oils, and with the refuse from said mines; and also the right to mine and remove the coal, limestone, ore, fire-clay, and oils of adjoining lands, through, over, or under said lands, during the continuance of this agreement.

5. " And the party of the second part agrees, by himself, his assigns, or workmen, to enter upon and make search for coal, limestone, ore, fire-clay, and oils upon the lands above described; and should he find coal, ore, limestone, fire-clay, and oils in said lands and adjoining lands, of sufficient thick- ness, quantity, and quality to justify him, the party of the second part, to open and work said mines, then he or his representatives or assigns shall pay to the party of the first part, his heirs or assigns, within ten years from the date

hereof, the sum of five dollars, and yearly thereafter during the continuance of this agreement.

6. " And the failure to make these advance payments yearly upon request, or within sixty days after demand upon the party of the second part, or his assigns, shall be deemed an abandonment of this agreement or lease; but not to the injury of the party of the second part or his assigns.

7. "And the party of the second part shall have the right to abandon said lands and mining at any time, and remove all his buildings and fixtures from said lands.

8. " And the said party of the second part, by himself or assigns, agrees to pay the party of the first part, their legal representatives or assigns, the sum of ten cents for each ton (of 2240 pounds) of screened coal and limestone mined and removed from said lands herein described; and the price or rent of the ore mined and removed from said lands for such gross ton of two thousand two hundred and forty pounds shall be   *   *   *   Petroleum oil shall be one-fifteenth portion in tank, to be removed by first party every day if second party require it.

9. " But it is understood and agreed that any advance payments of five dollars as before mentioned to be paid yearly, that shall be made to the party of the first part, are to apply on the payment of rent of coal first mined thereafter.

10. " The payment of rent per ton on coal, limestone, fireclay, iron ore, or other minerals, oil mined and removed, shall be made quarter yearly, and all *payments* required by this agreement shall be made and accepted in bankable funds of the State of Indiana.

11. " It is mutually understood by the parties that the coal under any dwelling-house, or other permanent buildings upon the premises, shall not be mined out, and as little injury to the surface of said land shall be done as possible in the mining, removal, and transportation of said coal, limestone, ore, fire-clay, or oil, as herein contemplated.   It is further understood and agreed upon as a part of this contract, that the party of the first part hereby grants and gives to the party

of the second part, * * * heirs and assigns, all the land in the above described premises that may be by said second party or assigns deemed necessary for the location, construction, and occupancy of a public railroad, together with lateral branches, with the right to procure * * *. It is also mutually understood that the stipulations herein contained shall apply to and bind the heirs, executors, administrators, and assigns of the parties, respectively.

" In witness whereof, the parties hereunto set their hands and seals, the day and year first above written.

" Sealed and delivered in presence of

                " WM. LOWDERMILK.

      " ARTHUR HELTON,   [Seal.]
      " RACHEL A. HELTON,  [Seal.]
      " SAMUEL STRAIN.    [Seal.]"

A question of practice is presented by counsel for the appellee, which is, that the complaint should set forth or be accompanied by the original or a copy of the assignment of the instrument. We do not think so. The action is not based on the assignment of the instrument. Indeed, it was not necessary that the instrument should be set out in the complaint. In an action to recover real property or to quiet the title thereto, it is not usual or necessary to set out the particulars of the plaintiff's title. In this case it was done, we presume, in order to present the question in controversy by demurrer to the complaint, rather than upon the trial of the cause.

We have divided the instrument into sections for convenience of reference, and have numbered the sections. Counsel for the appellant contend that the instrument in question creates only an estate at will, subject to be determined by either party, according to the law relating to such estates. Counsel for the appellee, on the other hand, contend that the interest is either a freehold estate of inheritance, or a continuing interest for the grantee or lessee so long as the coal or other specified minerals continue, and the tenant complies with the contract.

The term " land," in its legal signification, includes not

only the ground or soil, but everything attached to it above or below, whether by the course of nature, as trees, herbage, stones, mines, and water, or by the hand of man, as houses, etc.   Whatever lies in a direct line between the surface and the centre of the earth, belongs to the owner of the surface. Bainbridge Mines, p. 4.   And the fee simple which our law gives contemplates absolute power of disposal, and any limitation upon that power is repugnant to the estate and void. 1 Hilliard Real Prop. 50–55, and notes; 2 Sharswood Bl. Com. 102; 2 Bl. Com. 18.

The owner in fee simple has the power to sell and convey his mines, or any stratum, by deed or grant, so as to create one freehold in the soil and another in the mines, and as a conclusion from the premises, a freeholder of an estate of inheritance may, by deed, create as many freeholds beneath the surface as he can properly designate.   Thus, one person may own the surface, another may be entitled, by conveyance, to the iron, another to the limestone, and still another to a stratum of coal; for coal and minerals in place are land, and are subject to a conveyance as such, and the owner of the mineral right has a corporeal hereditament distinct from the surface.   *Caldwell* v. *Fulton*, 31 Penn. St. 475; *Harlan* v. *The Lehigh, etc., Co.*, 35 Penn. St. 287; Bainbridge Mines, pp. 7, 8, 9, 10; *Armstrong* v. *Caldwell*, 53 Penn. St. 284; Addison Torts, 116; *Whitaker* v. *Brown*, 46 Penn. St. 197; *Caldwell* v. *Copeland*, 37 Penn. St. 427; *Barnes* v. *Mawson*, 1 M. & S. 77.   This has long been settled in England and Pennsylvania.   See 31 Penn. St. 482.

Had the instrument in question stopped with the words in the second section, "bargain, sell, and convey unto the party of the second part, his heirs and assigns, all the mineral coal, limestone, iron ore, fire-clay, and oil, in, upon, and under the farm," etc., there would be no doubt but that an estate of inheritance would have been created.   But when we come to the closing part of the fourth section, it is found that the grant is only " during the continuance of this agreement."   The same words again occur at the conclusion of

the fifth section. In the sixth section, the instrument is characterized as an "agreement or lease." And in the eighth, ninth, and tenth sections, the compensation to be received by the grantor or lessor is called "rent." In the tenth, the word "agreement" is used. The seventh section is, we think, the clause which gives character to the instrument. It is there provided, that "the party of the second part shall have the right to abandon said lands and mining at any time, and remove all his buildings and fixtures from said lands."

It is provided by the statute, which was in force when this instrument was executed, that "a tenancy at will cannot arise or be created without an express contract," etc. 2 G. & H. 359, sec. 2. Here, then, is an express contract that, so far as the lessee is concerned, he may terminate the lease, abandon the lands and mining, and remove his buildings and fixtures from the lands at any time. This must be regarded as the creation of an estate at will. It is a stipulation which applies to the whole interest of both parties under the instrument, and every section and clause in it. The lessee has only to will it, and every part of the instrument and every interest under it, whether of the lessor or of the lessee, is at once at an end.

It is a well settled and well known rule of law that a lease or estate which is at the will of one of the parties is equally at the will of the other party. One of them is no more or no further bound than the other. As the lessee in this case had the clear right, at his will, to terminate the tenancy at any time, so also had the lessor. It cannot be otherwise. Blackstone says: "But every estate at will, is at the will of both parties, landlord and tenant; so that either of them may determine his will, and quit his connection with the other at his own pleasure." Book 2, p. 145, star paging. Kent says: "It was determined very anciently, by the common law, and upon principles of justice and policy, that estates at will were equally at the will of both parties, and neither of them was permitted to exercise his pleasure in a wanton

manner, and contrary to equity or good faith." Vol. 4, p.
111. 1 Washb. Real Prop. 505, 3d ed.

The case of *Doe, ex dem. Pidgeon,* v. *Richards,* 4 Ind. 374,
was a case where the lease was at the will of the lessee, as
is the case here, and the court said: "The substance of
that instrument is, that it gives to Richards the right to
occupy and improve the land in question for a certain con-
sideration, payable as he occupies, as long as he shall please
to do so. It gives him no absolute interest, which he can
convey to another on vacating the premises himself. When-
ever he removes from them, his right in them ceases. And
he is not bound to occupy them and pay the consideration a
day longer than he sees fit to do so. He has, in short,
under the instrument, an estate in the land at his own will.
Such being the character of the instrument, the case is easily
disposed of." The court then cites authorities in support
of the rule that the estate was equally at the will of the lessor
as at the will of the lessee, and on this ground the case was
decided in favor of the appellant. Counsel for the appellees
claim that the rule, so often pressed into service, that the
words shall be taken most strongly against the grantor,
should be applied in this case. But counsel forget that the
rule is not applicable to instruments such as this. The rule
applies to deeds executed by the grantor only, or deeds poll,
and not to indentures executed by both parties. 2 Bl. 380.

No rule of interpretation can change the fact, that the
lessee is by the express stipulation of the instrument author-
ized to abandon the lands and mining at any time, and
remove all his buildings and fixtures from said lands. It can-
not be held that this right to abandon the land and cease
mining has reference to the time when the lessee is pros-
pecting for minerals. The parties did not provide simply
that he might abandon the land and cease to search for min-
erals, when, upon search, he had failed to find minerals, or
had failed to find them in such quantity as to justify the
further prosecution of the enterprise. But the agreement is
that he may do so "at any time." Such language is too

plain to admit or need interpretation. It does not remove ·
the difficulty to regard the instrument as a license; for how-
ever it may be regarded, it is still subject to the same limita-
tion, and is binding no longer than the lessee or licensee
shall see fit to be bound by it. We are aware of the doc-
trine that a mere license, which is revocable at the pleasure
of the party giving it, may be irrevocable if coupled with
an interest in the licensee, or when it has been acted upon
by the party to whom it has been granted. *Snowden* v. *Wilas,*
19 Ind. 10. The distinction between a lease of mines and a
license to work mines was stated in *Funk* v. *Haldeman,* 53
Penn. St. 229. The court say:

"'The former is a distinct conveyance of an actual interest
or estate in lands, while the latter is only a mere incorporeal
right to be exercised in the lands of another. It is a profit ·
*a prendre,* and may be held apart from the possession of the
land. In order to ascertain whether an instrument must
be construed as a lease or a license, it is only necessary to
determine whether the grantee has acquired by it any estate
in the land, in respect of which he might bring ejectment.
If the land is still to be considered in the possession of the
grantor, the instrument will only amount to a license, and
though the licensee will certainly be entitled to search and
dig for mines according to the terms of the grant, and
appropriate the produce to his own use, on payment of the
stipulated rent or proportion, yet he will acquire no property
in the minerals till they are severed from the land, and have
thus become liable to be recovered in an action of trover.'
In the coal-mining districts of Pennsylvania, leases for terms
of years are very common. They are estates in land. The
rent is usually measured by the tons taken, but the tenant
is bound to a minimum production annually, and the trans-
action amounts to a sale, at a price per ton, of the coal in the
premises, and constitutes an interest in the lessee in the
nature of a corporeal hereditament."

In the instrument in question in the case at bar, there is a

grant of the mineral coal, limestone, iron ore, fire-clay, and oil, in, upon, and under the land, and the lessee is granted not only the right to go upon the land and remove the same, but he is given the right to " occupy the land with such constructions and buildings as may be necessary and useful for the full enjoyment of the advantages of said coal," etc., reserving to himself, however, the right to abandon the land and mining at any time. If the foregoing distinction between a lease and a license is correct, then this must be a lease and not a license.

We regard the instrument in question as a lease, and as creating an estate at will.

What shall be the rights of the parties at the termination of the lease, we are not now called upon to decide.

The judgment is reversed, with costs; and the cause is remanded, with instructions to overrule the demurrer to the complaint.

BUSKIRK and PETTIT, JJ., dissent.

Opinion filed November term, 1873; petition for a rehearing overruled May term, 1874.