Wytheville.

COWAN *v.* RADFORD IRON CO.

JUNE 30th, 1887.

1. ESTATES AT WILL—*Mutuality—Termination.*—If one party may terminate an estate at *his* will, so may the other. Right to terminate is mutual.

2. IDEM—*Mining leases—Case at bar.*—Where the minerals in certain land are sold with the usual mining rights to begin at any time after date of the agreement, with no time fixed for their ending, whilst the compensation is to be paid *quarterly,* as the iron ore is mined ; but lessee to have the privilege of removing from the land *at any time* any machinery, etc., erected by him ; and lessee has abandoned and failed to mine, and pay anything *quarterly,* he must be held to have terminated the estate, as he had the right to do, and lessor is no more and no further bound thereby.

Appeal from decree of circuit court of Pulaski county, rendered March 28th, 1885, in a cause wherein George W. Cowan was complainant and the Radford Iron Company was defendant. The object of the suit was to cancel a mining lease. The decree was against the complainant, and he appealed. Opinion states the case.

*J. C. Wysor,* for the appellant.

*J. E. Moore,* for the appellee.

LACY, J., delivered the opinion of the court.

The bill was filed in January, 1884, to have rescission of

an agreement made between the parties in 1880, for the sale of the iron ore on the farm of the appellant, which agreement is as follows :

" Agreement this day made and entered into by and between George W. Cowan, of the first part, and the Radford Iron Company of Virginia, of the second part, witnesseth that, for the consideration hereinafter expressed and contained, the said George W. Cowan has this day sold to the said Radford Iron Company all the ores, minerals, and valuable mineral products and substances upon and under the soil and surface of all that certain tract or parcel of land.lying and being in the county of Pulaski, and State of Virginia, on the south side of New river, containing seventy-seven and one-half acres, and bounded as follows, to-wit: Beginning  *  *  *

"And it is understood, stipulated, and agreed, by and between the said parties of the first and second part, that the sale of the ores, minerals, and mineral products upon the said tract or parcel of land, carries with it and vests in the purchaser the usual mining rights and privileges; that is to say, the right to enter at any time, from and after this date, upon the said land, with workmen, horses, wagons, carts, machinery, and mining tools and implements, and to dig for, mine, and explore, and to raise and carry away from or to deposit upon the said land all ores, minerals, and mineral substances which may be found on or under the soil or surface thereof. Also to use and employ sufficient surface room upon the said tract of land to erect and operate machinery and fixtures for mining and raising the ores, and pumping water from the mines, and to construct drains and ditches for carrying off the water so pumped ; and also to use and employ sufficient surface room for the deposit of the refuse matter taken from the mines, and for the deposit of the ores and minerals taken from the mines, until the same can be conveniently trans-

ported. Also the right and privilege to erect, upon the said tract or parcel of land, dwellings for the hands and workmen employed in and about the mining operations, and stables for the horses used in mining, and transporting the ores and minerals; also to make and construct, and freely to use, all such roads and wagons over and through the said tract or parcel of land as the convenient development and working of the mines, and the transportation of the ores, minerals, and other things connected with the mining operations may require, embracing a road from the mines to connect with the Lead Mine road at the most suitable point; also to use water for washing the ores, and to take from the said tract or parcel of land, without charge, all timber necessary for mining purposes, and the erection of machinery and fixtures employed. But the privilege of taking timber is limited to such as is unfit for making rails. And it is further and expressly agreed by and between the said parties that the party of the second part, their representatives, successors, or assigns, shall have the right and privilege of removing from the said tract of land at any time any machinery, buildings, fixtures, or improvements made or erected by that party upon it. The said Radford Iron Company covenants, promises, and agrees to pay to the said Cowan, in quarterly payments, fifteen cents per ton of 2,240 pounds for all the iron ores taken from his land by them, the amount of the ore so taken to be determined by the books of said company, their successors or lessees."

This agreement having been executed on the twenty-second day of June, 1880, in the summer and fall of that year the company, in pursuance of its provisions, entered upon the said land, removed a small quantity of ore therefrom, some two hundred tons, paid to the appellant fifteen cents per ton for the same, and then, for reasons which to them seemed sufficient, abandoned the enterprise, and

have not since concerned themselves with the said land. But the agreement being of record, and appearing uncancelled and unreleased, when the appellant sought to place his iron ore into the hands of other operators, the said agreement deterred them from any dealings concerning the said iron ore. The appellant then applied to the said company, as they had abandoned the business, to enter upon record a release or cancellation of the agreement which would enable him to make sale of this iron ore to others. This the company refused to do, either without or upon a consideration, and announced their claim and asserted the right to hold this agreement as a deed by which they had purchased the ore in question, under which they were under no binding obligation to operate, nor to pay any consideration, until it should comport with their own views of their interest in the matter; that they did not propose to mine iron ore at a loss, nor would they allow others to operate this iron ore at a profit. The circuit court sustained the pretension of the defendants, and, holding that the plaintiff was not entitled to any relief in the premises, dismissed his bill; whereupon he appealed. The question to be considered here is, what is the true construction of this agreement, which has been recited in full? It is elementary that every contract must receive a reasonable construction. An agreement to pay money, no time being specified, has been held to be an agreement to pay the same on demand; while an agreement to do something other than to pay money, no time being expressed, means a promise to do it within a reasonable time. *Warren* v. *Wheeler,* 8 Metc. 97; *Atwood* v. *Cobb,* 16 Pick. 227; *Ryan* v. *Hall,* 13 Metc. 520; *Thompson* v. *Ketcham,* 8 Johns. 189; *Barry* v. *Ransom,* 12 N. Y. 462; 2 Kenn 462.

Regard should be had to the intention of the parties, and such intention should be given effect. To arrive at this intention, regard is to be had to the situation of the par-

ties, the subject-matter of the agreement, the object which the parties had in view at the time, and intended to accomplish. A construction should be avoided, if it can be done consistently with the tenor of the agreement, which would be *unreasonable* or unequal, and that construction which is most obviously just is to be favored as most in accordance with the presumed intention of the parties. *Howeth* v. *Anderson*, 25 Tex. 557; *Warner* v. *Hitchins*, 5 Barb. 669; *Halloway* v. *Lacy*, 4 Humph. 468.

The agreement in question may be denominated a "mining lease." The ore and minerals are sold, and the purchaser is invested with the usual mining rights, which are enumerated. These rights are to begin at once, at any time after the date of the agreement, the compensation is to be paid *quarterly*, as the iron ore is mined. No time is specified for the work to end, and for these rights to expire. But a stipulation is inserted, by which it is further and expressly agreed that the company shall have the right and privilege of removing from the said tract of land, at any time, any machinery, buildings, fixtures, or improvements made or erected upon it by the said company. If one party may, then, terminate the lease at any time, it may will it; if this estate is at the will of one of the parties, it is equally at the will of the other.

As was said by Downey, C. J., in *Knight* v. *Indiana Coal and Iron Co.*, 47 Ind. 105 : "It is a well-settled and well-known rule of law that a lease or estate, which is at the will of one of the parties, is equally at the will of the other party. One of them is no more and no further bound than the other. As the lessee in this case had the clear right, at his will, to terminate the tenancy at any time so also had the lessor. It cannot be otherwise." Blackstone says, (Book 2, p. 135) : "But every estate at will is at the will of both parties, landlord and tenant; so that either of them may determine his will, and quit his connection with the

other at his own pleasure." Kent says (volume 4, p. 111): "It was determined very anciently by the common law, and upon principles of justice and policy, that estates at will were equally at the will of both parties, and neither of them was permitted to exercise his pleasure in a wanton manner, and contrary to equity and good faith." See, also, the case *Doe* v. *Richards*, 4 Ind. 374.

The lessee, having abandoned the work, failed to mine, and failed to pay anything *quarterly*, as the lease provides, it must be held to have terminated the estate, as it had the right to do, and the lessor is no more and no further bound thereby. The said agreement, being no longer of any binding obligation upon the parties thereto, still, in violation of the just rights of the lessor, remains unreleased and uncancelled upon the records, to hinder him in the full enjoyment of the property which is his. The lessee cannot refuse to execute the contract according to its plain and most reasonable interpretation, refuse to mine the ore and pay for the same quarterly, according to its contract, and yet justly maintain any other rights concerning the same. His rights under the contract having terminated, he could not reasonably object to a rescission of the lease, and the circuit court of Pulaski county could refuse its aid in this behalf upon no just ground. And the decree of the said court dismissing the bill of the plaintiff, upon the ground that he was entitled to no relief in the premises, is erroneous, and must be reversed and annulled, and such decree entered here as the said circuit court should have rendered.

DECREE REVERSED.