WILLIAM M. HOBART *et al.*, Respondents, v. A. H. MURRAY, Appellant.

St. Louis Court of Appeals, May 9, 1893.

1. **Statute of Frauds:** MANNER OF INVOKING ITS PROVISIONS. A defense based upon the statute of frauds cannot be invoked, when it has been neither pleaded nor raised by objection to the introduction of evidence at the trial.

2. **Conveyance for Mining Purposes:** REQUISITES OF LEASE. An agreement in writing purported in consideration of stipulated royalties to lease lands for mining purposes only, and, subject to the limitation that the grantee's rights should not be interfered with, reserved the right of occupation for the purposes of cultivation to the grantor. It provided that it should remain in force until the mineral should be exhausted, but otherwise had no fixed term. *Held*, that this agreement was not a lease, since it had no determinate period.

3. ———: GRANT OF MINERAL IN LAND. But, *held*, further, that this agreement was more than a mere license to mine, and that, while in force, it operated as a transfer of all mineral within the land, and as an exclusive *grant of the right to mine therefor.*

*Appeal from the Greene Circuit Court.*—HON. W. D. HUBBARD, Judge.

AFFIRMED.

*Wm. O. Mead* and *T. T. Loy*, for appellant.

The petition alleges the existence of a lease. The one offered in evidence is not a valid lease, nor is it a

lease or license for a longer period than five years, which had expired long before the cause of action here is alleged to have accrued. 2 Greenleaf's Cruise on Real Property, sec. 15, top p. 378; 1 Washburn on Real Property [5 Ed.] sec. 6, p. 470; Martindale on the Law of Conveyancing [1 Ed.] sec. 322, p. 271; Taylor's Landlord & Tenant [5 Ed.] secs. 74, 75, 76 and 77, p. 53; *Austin v. Mining Co.*, 72 Mo. 535. The paper offered in evidence is more in the nature of a license than a lease. It does not purport to be a conveyance of an interest in the land, nor does it give a right of possession. It is a mere license to dig and take mineral, on which the licensee is to pay a stipulated royalty per ton. The right to mine is not exclusive to the licensee. The licensor may go upon the land and mine on his own account, or he may license others to do so; hence, the plaintiffs here have no cause of complaint. 1 Washburn on Real Property [5 Ed.] pp. 661, 668 and 669; Washburn's Easements & Servitudes [3 Ed.] sec. 15, p. 15; *Nega v. Paving Co.*, 17 Mo. App. 294; *Austin v. Mining Co.*, 72 Mo. 535.

*Goode & Cravens*, for respondents.

BIGGS, J.—It is alleged by the plaintiffs in their petition that they appointed the defendant their agent to manage certain mining interests, and that as such agent he collected from parties working the mines the sum of $1,000, which sum he has neglected and refused to pay. The defendant's answer is a general denial. A trial before a jury resulted in a verdict for the plaintiffs for $249, upon which the court entered a judgment. The defendant has appealed. His assignments of error pertain to the instructions and to the admission and exclusion of evidence.

A brief statement of the facts is necessary to a proper understanding of the questions presented by the record for our decision. It appears from the evidence that on the tenth day of January, 1880, John C. Hutchins, who was at that time the owner of eighty acres of mining land, entered into the following written agreement in reference thereto with one John G. Perryman:

"This indenture made and entered into this tenth day of January, A. D. 1880, by and between John C. Hutchins of the county of Greene in the state of Missouri, as party of the first part, and John G. Perryman of the county of Greene and state of Missouri, party of the second part, witnesseth: That the said party of the first part for and in consideration of the sum of $1 to him in hand paid by the said party of the second part (the receipt of which is hereby acknowledged), and in further consideration of the rent or royalty to be paid as hereafter provided, does by these presents demise and lease to the said party of the second part, his heirs, executors, administrators and assigns, the following described tracts or parcels of land, situate, lying and being in the county of Greene in the state of Missouri, to-wit, the southeast quarter of the northeast quarter, and the northeast quarter of the southeast quarter, section 32, township 30, range 24, and containing eighty acres, more or less, for mining and manufacturing purposes only, and for the term of five years at least from the date hereof, and until the mines opened and hereafter opened on any of said lands shall be worked out, but to continue during the existence of mineral on said land for said purposes. The said party of the second part, executors, administrators and assigns, their agents and workmen, shall have the right at all times to enter upon said lands to mine the same, to dig, to explore and bore for coal,

iron, lead, silver, tin, zinc, blackjack minerals, and all other precious metals on or in said lands to be found, and for that purpose to dig, sink, drive, make and use all pits, shafts, pumps, water courses and other works which may be necessary for mining and obtaining the same; to remove the said minerals therefrom, to erect buildings, sheds, hovels, machinery and other works, which may be such as smelting and manufacturing works, and to operate the same; except second party shall have no right to erect any buildings on the northeast five acres of said tract of land for any purpose. The said party of the first part shall have the right to cultivate the said lands, but not to interfere with or impair the rights of the party of the second part. The said party of the second part shall pay the said party of the first part, his heirs or assigns, on the first day of each and every week, rents or royalties on all mineral or ores mined and delivered during the preceding week as follows: On lead ore, of not less than sixty-six and two thirds per cent. of pure lead, $3 per thousand pounds; on zinc ore, $1 per ton; on all other grades of lead ore a portionably high royalty; on all other ores or minerals or fossil substances the usual proportionate rent or royalty. All property placed by said party of the second part, his heirs and assigns, on said premises may be removed by him therefrom at any time, provided that all rents and royalties which may be due shall have been paid as aforesaid. It is further agreed that the party of the second part, his executors, administrators or assigns, or any of them, may at any time or times hereafter during the time hereby granted lease, let or demise, all or any part of said land or premises hereby demised, or may assign, transfer or make on the same, or the present lease, or any of their term or time thereon, to any person or persons whomsoever.

"It is hereby expressly understood that this lease is intended to alter, change, amend a certain lease heretofore executed by said first party to said second party, of July 5, 1879, and recorded in book number 37, pages 641, 642, 643, in the recorder's office of said county.

"In witness whereof the parties have hereto set their hands and seal the day and year first above written.

"[SEAL.]         JOHN G. PERRYMAN,
"[SEAL.]         JOHN C. HUTCHINS,
"[SEAL.]         MARY A. HUTCHINS."

This instrument was acknowledged in due form. Perryman assigned his interest to Ralph Walker; Walker assigned to E. A. Hurt; and on the fourteenth day of August, 1888, Hurt assigned to the plaintiffs. At the time the plaintiffs acquired their interest, the defendant had become the owner of the interest of Hutchins in the land, subject to the agreement.

The evidence of the plaintiffs tended to prove that, at the time the contract of agency was entered into, the mining on the land was done by tenants of the plaintiffs, and that a certain per cent. of the value of the mineral taken out was paid by them as royalties or rent, a portion of which under the written agreement went to the owner of the land, and the remainder was retained by the plaintiffs; that prior to the first day of April, 1889, E. A. Hurt had acted as agent of the plaintiffs in the management of the mines and in the collection of the royalty; that on that day the defendant, in consideration of the discharge of Hurt and the employment of himself as such agent and manager, agreed to reduce the amount of the royalty due to him under the agreement, so that the total amount to be paid thereafter by the miners would not exceed twenty per cent. of the value of the ore, ten per cent. of which he was to collect and pay to the plaintiffs; that pursuant to this agreement the defendant did act as such

agent or manager until June 10, 1890, and that during that time he collected the royalty. The defendant did not deny that he had collected the money, but he did deny the alleged contract *in toto*, and he also denied that the plaintiffs acquired any rights under the agreement.

It is urged by counsel that the judgment must be vacated because the alleged parol modification of the written agreement, upon which the plaintiff's right of action is based, is void under the statute of frauds. This objection is not available to the defendant. The statute of frauds was not pleaded; neither was the oral evidence, which was offered in support of the modified agreement, objected to on the trial.

Whether the statute of frauds should in all cases be pleaded is a question about which the decisions of the supreme court do not seem to be in accord. Some of them seem to hold that in *all* cases the defense must be treated as new matter, and, unless specially pleaded, will be regarded as having been waived (*Gardner v. Armstrong*, 31 Mo. 535; *Sherwood v. Saxton*, 63 Mo. 78); while others seem to hold that, when the contract is denied, the party relying on the statute may raise the defense by objection to the admission of proof. (*Allen v. Richard*, 83 Mo. 55; *Springer v. Kleinsorge*, 83 Mo. 152.)

In the case of *Sharff v. Klein*, 29 Mo. App. 549, this court decided that the defense must either be made by the pleadings or be raised by timely objection to the evidence, and that, if the party relying on it did neither, it could not be raised by instructions. Under the authority of that case we will have to rule this assignment against the defendant.

The point is made that the written agreement is not a lease but a mere license to dig and prospect for mineral, and that such license is not, under the terms

·of the instrument, exclusive. Therefore, counsel argue that the court committed error in refusing to give an instruction asked by defendant, to the effect that his liability, if he could be held at all, was limited to ten per cent. of the value of the mineral which was shown to have been taken out by the plaintiff's tenants. If this is the interpretation of the writing, there is something in the point; because, if the plaintiffs were mere licensees, their right to take mineral from the land was not exclusive, and their right to claim royalty would be ·confined to the mineral taken out by their tenants or by persons working under their authority. It was ·said by Lord ELLENBOROUGH in the case of *Chetham v. Williamson*, 4 East, 469: "No case can be named where one who has only a liberty of digging for coals ·in another's soil had an exclusive right to the coals, ·so as to enable him to maintain trover against the ·owner of the estate for coals raised by him."

We are inclined to agree with the defendant's ·counsel that the agreement can not be construed to be ·a lease, for it has no "determinate period." *(Austin v. Mining Co.*, 72 Mo. 535.) The right to take mineral is indefinite, as it is to continue until the mineral is exhausted. Mr. Washburn in his treatise on the law ·of real property says: "It seems to be regarded as ·essential to a good lease for years that it should be ·either for a certain period, measured by years, months or the like, or for a period uncertain only from the ·circumstance that it may be determined before its natural expiration by the happening of some event, or ·that it be for a purpose which, of itself, serves to ascer-·tain the length of time for which the premises are to be held." 1 Washburn on Real Property [5 Ed.] ·sec. 6, p. 470.

But is the instrument a mere license to dig and ¯prospect for mineral, accompanied with the grant of

a beneficial privilege in the land, but no estate or interest therein? We think not. Subject to the payment of a stipulated royalty, the instrument transfers all mineral within the land, with the exclusive right by the grantee to occupy the premises for mining purposes. The effect of this transfer was to clothe Perryman with a beneficial interest in the land itself, as the mineral is a part of the land.

In the case of *Caldwell v. Fulton*, 31 Pa. St. 475, the court held that "an exclusive right to all the coal to be taken without limitation, except as to point of ingress and egress, is the sale of the coal itself." The court also held that the surface might belong to one person and the coal to another. The same court in the case of *Caldwell v. Copeland*, 37 Pa. St. 427, held: "That mines may form a distinct possession, and a different inheritance from the surface land, has been settled in England, as may be seen by reference to the cases cited in the two opinions heretofore delivered in this case, and reported in 7 Casey, 476, 482. See also *Barnes v. Mawson*, 1 Maule & Sel. 84. It is a common occurrence in mining districts there, not only that the ownership of the soil is vested in one person, and that of the mines in another, but there are frequently distinct ownerships of the minerals in the same land. Thus, one person may be entitled to the iron ore, another to the limestone, a third to one seam or stratum of coal, and a fourth to a distinct stratum. Title to any of these minerals, quite distinct from the title to the surface may be shown by documentary evidence, or in the absence of such evidence or in opposition to it title to them may be made out by proof of possession and acts of ownership under the statute of limitations."

Chief Justice Abbott in the case of *Doe v. Wood*, 2 B. & Ald. 736, draws the distinction between a min-

ing license and a grant of all minerals or ores. The court was dealing with a mining license granted by deed. Concerning this deed it was said: "Instead, therefore, of parting with or granting or demising all the ores, metals or minerals that were then existing within the land, its words import a grant of such parts thereof only as should, upon the license and power given to search and get, be found within the described limits, which is nothing more than the grant of a license to search and get (irrevocable, indeed, on account of its carrying an interest), with a grant of such of the ore only as should be found and got, the grantor parting with no estate or interest in the rest. If so, the grantee had no estate or property in the land itself or any particular portion thereof, or in any part of the ore, metals or minerals ungot therein; but he had a right of property only as to such part thereof as upon the liberties granted to him should be dug and got. That is no more than a mere right to a personal chattel, when obtained in pursuance of incorporeal privileges granted for the purpose of obtaining it, being very different from a grant or demise of the mines or metals or minerals in the land, and is such a right only as, under the circumstances stated in the case, is not sufficient to support the present action of ejectment."

Our conclusion is that the title to all minerals within the land was transferred to Perryman, subject to the claim of the primary owner of the land for royalties, and subject also to his right to have the transfer canceled in case of abandonment by Perryman or his assigns, or other course of conduct by them calculated to defeat the object of the grant. It therefore follows that the court did right in refusing the defendant's instruction, for the reason that he must

account to the plaintiffs for their share of all royalties collected, and it made no difference by whom the mineral was taken out. What we have said also disposes of the objection to other instructions.

During the time the defendant was acting as the agent of the plaintiffs, Hobart secured an option on defendant's interest in the land with a view of disposing it to other parties in the state of Pennsylvania. Hobart and the defendant had considerable correspondence about that part of their business. The court declined to permit the defendant to read the letters. We have read them, and there is nothing in them, as claimed by the defendant, which has any tendency to disprove the alleged contract of agency. Therefore, the court did right in excluding them.

Objections were made to the admission of evidence offered by the plaintiffs, but we do not deem it necessary to discuss them. They are without merit.

With the concurrence of the other judges the judgment of the circuit court will be affirmed. It is so ordered.