## CHARLES SANFORD'S APPEAL FROM THE BOARD OF RELIEF.

First Judicial District, Hartford, March Term, 1903.

TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A lease of land for a term of forty years, for the sole purpose of digging and removing the mineral therein, at a yearly rent and fixed royalty, creates but a chattel interest in the grantee, which, under our statutes relating to taxation (General Statutes, Rev. 1902, §§ 2299, 2322, 2323, 2341) is not taxable as his property. The mine or quarry continues to be the property of the lessor, in whose name it should be separately listed and taxed, under the provisions of § 2322.

A taxpayer who voluntarily appears before the board of relief and is fully heard upon the merits of the matter in question, cannot afterwards take advantage of the fact that he received only a four days' notice of the hearing, instead of one week as required by § 2347.

The board of relief noted its doings in the assessors' book, and returned it to the town clerk's office after the fourth Monday in February, on which date the board was required (§ 2346) to complete its duties, but gave no other notice or announcement of its decisions. *Held* that such conduct did not constitute such a failure to complete its duties within the prescribed time as to render void the addition made to the appellant's tax list.

The validity of the action of the board of relief in making an addition to a taxpayer's list is not affected by the fact that the item added was also erased from the list of another taxpayer.

Argued March 3d—decided April 17th, 1903.

ACTION in the nature of an appeal from the doings of the board of relief of the town of Roxbury, in adding a mine or quarry to the plaintiff's tax list, brought to the Superior Court in Litchfield County and tried to the court, *George W. Wheeler, J.;* facts found and judgment rendered confirming the action of the board of relief, and appeal by the taxpayer. *No error.*

The case is sufficiently stated in the opinion.

*Frederic M. Williams,* for the appellant (taxpayer).

*Arthur D. Warner,* with whom was *James Huntington,* for the appellee (the town).

HALL, J.   In 1894 and 1895 the plaintiff, who is a resident of Roxbury in this State, leased for the term of forty years to one Phillips, by two written leases containing similar provisions, about twelve acres of land in said Roxbury containing mineral deposits called garnets.

By various duly recorded assignments H. Behr & Company, a copartnership the members of which resided in New York, had, prior to October 1st, 1901, become the owners of all the estate, rights and privileges granted by said leases, and had opened quarries or mines upon said land.   Behr & Company having given in no tax list for the year 1901, the following property was placed in their list as nonresidents by the assessors: "one mill, $2,500; garnet quarry, $2,500."   Said garnet quarry was upon the land described in said leases to Phillips. The plaintiff gave in a list of the taxable property owned by him October 1st, 1901, one item of which was eighty-nine acres of land, duly described, and valued by the assessors at $3,235. Said eighty-nine acres embraced the land described in said leases, but no quarries, mines, or ore beds, were named or included in the plaintiff's list.   On January 23d, 1901, the clerk of the board of relief of the town of Roxbury handed to the plaintiff a writing notifying him to appear on the 27th of that month to show cause why they should not add to his list the garnet quarry (theretofore listed to him but omitted that year) at the same price it was assessed to him the previous year.   The plaintiff appeared before said board at the time named and was fully heard, and the board added the garnet quarry to the plaintiff's list, assessing it at $2,500, which was not more than its market value, and struck the same from the list of Behr & Company.   Behr & Company did not appear before the board of relief, but the board informed the plaintiff that Behr & Company had notified them by letter that if the quarry was listed against them they would not pay the tax.

The principal question raised by the plaintiff's appeal from the board of relief is whether, in the year 1901, the garnet quarry or mine, upon the land described in the leases

above-named, should have been listed as the property of the plaintiff, or as the property of Behr & Company.

Section 2299 of the General Statutes of 1902, provides that "any interest in real estate listed for taxation shall be set by the assessors in the list of the party in whose name the title to such interest stands on the land records of the town in which such real estate is situated." This section is part of an Act passed in 1887, entitled an "Act concerning the Taxation and Record of Title of Real Estate." Public Acts of 1887, Chap. 127, p. 749. It is not a provision for the listing or taxation of personal property. It means that any separately taxable interest in real estate shall be set in the list in the name of the owner of record of such interest. An estate for years in land is a mere chattel interest. *Goodwin* v. *Goodwin*, 33 Conn. 314, 318; *Flannery* v. *Rohrmayer*, 49 id. 27, 28. Such an interest, unless otherwise provided by statute, is generally not taxable separately from the freehold; although there may be exceptional cases where an interest in real estate, conveyed by an instrument in the form of a lease for a term of years, may for certain purposes be regarded as a fee, as in the case of *Brainard* v. *Colchester*, 31 Conn. 407, 411, in which it was held that a lease of real estate for a gross sum, for 999 years, was to be considered for the purposes of that case, as practically a conveyance of a fee. Such a chattel interest is not named either in § 2322 or § 2323 (Rev. 1902), which enumerate the kinds of real and personal property liable to taxation, unless indeed it can be said to be described by the language of § 2322 concerning "quarries, mines, and ore beds," to which we shall hereafter refer; and the very fact that § 2341 provides that an estate for years by gift or devise, and not by contract, shall be set in the list of the person in possession thereof, clearly shows that it was not intended, by the language of § 2299, to require estates for years by contract to be listed for taxation in the name of the record owner of such chattel interest. The interest in real estate which § 2299 requires to be listed in the name of the record owner, is not a mere chattel

interest in land, but a freehold interest properly termed real estate.

Section 2322 (Rev. 1902), in describing the real estate liable to taxation, provides that "quarries, mines, and ore beds, whether owned in fee or leased, shall be set in the list separately, at their present true and actual valuation." It was not the purpose of this section to direct in whose name different items of real estate should be listed, but to provide what items of real estate should be taxed. Construed in connection with § 2299, this language means that quarries, mines and ore beds shall be placed in the list in the name of the record owner thereof, as separate items of real estate, whether severed or not from the surface by a conveyance to another of such quarries and mines only. It is the quarries and mines which are to be listed, and not an estate for years in quarries and mines separate from the freehold estate in them. The value at which they are to be listed is that of the quarries and mines themselves, and not the value of an estate in them for years. Clearly it was not intended that the owner of an estate in them for years, for however brief a term, should be liable to be taxed for the full value of such quarries or mines, however great that value might be, nor is there any provision that quarries and mines shall be placed in the lists of both the owner and lessee for years, at separate valuations of their respective interests in them. The quarries or mines in question were therefore not properly taxable as the property of Behr & Company, unless, upon the delivery to Phillips of the leases referred to, he immediately became the owner of the unmined garnets beneath the surface of the land described in those instruments.

"Though minerals undisturbed, or *in place*, are a part of the freehold and as such usually belong to the owner of the soil, they are capable of separate ownership and distinct possession. When there is such a severance of estates, the minerals are real estate, constituting a separate corporeal hereditament, capable of distinct inheritance and conveyance," and to the methods of transferring which the general rules regarding conveyances of real estate ordinarily apply. The

owner of land may therefore convey the surface or soil in fee, reserving or excepting either an estate in the minerals, or a right to mine them ; he may convey an estate in fee in the minerals separate from the soil; or, while retaining in himself the property in the minerals until removed and in possession of the grantee, he may either grant the right or privilege to mine for them, or may lease for a term of years the land itself together with the privilege of mining during the term. Barringer & Adams on the Law of Mines and Mining, p. 35; *Adam* v. *Briggs Iron Co.*, 7 Cush. 361, 366 ; *Caldwell* v. *Fulton*, 31 Pa. St. 475 ; *Manning* v. *Frazier*, 96 Ill. 279; *Wardell* v. *Watson*, 93 Mo. 107 ; *Hartford & Salisbury Ore Co.* v. *Miller*, 41 Conn. 112, 129.

The instruments by which these several estates or interests in minerals are created are frequently, without distinction, called mining leases, and the numerous decisions as to the respective titles conveyed by them are not entirely harmonious. Their legal effect is to be determined not so much by the name given to them, or the technical terms employed in them, as by ascertaining from the entire language of each instrument the real intention of the parties, by applying to it the ordinary rules governing the construction of written conveyances.

When it clearly appears from the language of the instrument, that it was intended to convey at a fixed price the whole or a specified part of the unmined minerals in a described tract of land, it is generally held that an absolute ownership in fee of such minerals in place vests in the grantee immediately upon the delivery of the conveyance ; and in some cases, particularly in Pennsylvania, it has been so held when the conveyances took the form of leases for a term of years. *Chester Emery Co.* v. *Lucas*, 112 Mass. 424 ; *Hobart* v. *Murray*, 54 Mo. App. 249 ; *Edwards* v. *McClurg*, 39 Ohio St. 41 ; *Hope's Appeal*, 29 Wkly. Notes Cas. (Pa.) 365, 3 Atl. Rep. 23 ; *Sanderson* v. *Scranton*, 105 Pa. St. 469 ; *Montooth* v. *Gamble*, 123 id. 240 ; *Lillibridge* v. *Lackawanna Coal Co.*, 143 id. 293 ; *Kingsley* v. *Hillside C. & I. Co.*, 144 id. 613 ; *Lazarus' Estate*, 145 id. 1 ; *Plummer* v. *Hillside C. & I. Co.*, 160 id. 483.

Instruments which only give a right or privilege of entering upon land for the purpose of mining and removing the minerals therefrom, are held to convey no title to or property in the minerals themselves while in the ground, and to create no greater interest in land, even though that interest be real estate, than an incorporeal right to mine, with a title in the minerals after they have been removed by the grantee. *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290 ; *Smith* v. *Cooley*, 65 Cal. 46 ; *Kamphouse* v. *Gaffner*, 73 Ill. 453 ; *Boone* v. *Stover*, 66 Mo. 430 ; *Silsby* v. *Trotter*, 29 N. J. Eq. 228 ; *Baker* v. *Hart*, 123 N. Y. 470 ; *Gillett* v. *Treganza*, 6 Wis. 343 ; *Gaston* v. *Plum*, 14 Conn. 344.

The weight of authority clearly is, that an instrument which purports to convey certain land at a fixed rent for a term of years, for the purpose of mining, or with the privilege of mining during the term, or which grants merely the right or privilege to mine for a term of years upon described land, conveys no greater estate in the land or the minerals in place than a chattel interest. Barringer & Adams on Law of Mines and Mining, p. 51 ; *Austin* v. *Huntsville C. & M. Co.*, 72 Mo. 535 ; *Genet* v. *Delaware & Hudson Canal Co.*, 136 N. Y. 593 ; *Knight* v. *Indiana C. & I. Co.*, 47 Ind. 105 ; *Massot* v. *Moses*, 3 S. Car. 168 ; *Cowan* v. *Radford Iron Co.*, 83 Va. 547 ; *Duke* v. *Hague*, 107 Pa. St. 57 ; *Brown* v. *Beecher*, 120 id. 590 ; *Ganter* v. *Atkinson*, 35 Wis. 48 ; *Denniston* v. *Haddock*, 200 Pa. St. 426. In the case last cited, which was decided in 1901, Mitchell, J. (p. 428), in speaking of some of the earlier Pennsylvania decisions, says that " the · expression that a conveyance of coal in place, even by a lease for a limited term, is a sale, is inaccurate as a general proposition of law, and unfortunate from its tendency to mislead," and that " the rules applicable to sales are not to be applied indiscriminately to such instruments, but each is to be construed like any other contract by its own terms." A collection of cases regarding questions of title to minerals under conveyances of different characters may be found in Chap. 2 of Barringer & Adams, above cited.

Examining the two leases before us, we find that they do

not in terms convey either the whole or any specified part of the minerals in or under the described land. Each instrument expressly leases to Phillips, his heirs and assigns, for the term of forty years, a described tract of land "for the purpose of mining garnets thereon, with all the privileges pertaining thereto, such as the right to mine for said garnets or the mineral products contained in said property, with privilege to cart and carry away such garnets and products from said lot, with right of way to and from." For said purpose the lessee is given the right to erect buildings and machinery, and to remove them at pleasure. He is to pay a certain rent semi-annually, and also a royalty of $2 per ton, payable monthly, upon all garnets "so mined and taken from said property." After the second year the lessee may terminate the lease by the payment of $500. "If the rent of said property is not paid when due, then and in such case the property shall revert to the party of the first part" (the plaintiff), and the instrument is to become null and void. The leases are executed as deeds by both parties, and recorded.

By these provisions the lessee does not pay any sum for the garnets in place, but pays a fixed annual rent for the property, whether he mines the garnets or not, with the right to remove the minerals only during the term, which may be forfeited for nonpayment of rent, or terminated by the lessee after two years. No quarries or mines were conveyed, for none existed when the leases were executed. It is not claimed that the lessee took any greater interest in the land, apart from the minerals, than an estate for years. In so far as these instruments convey an interest in land, they are either grants of an incorporeal right to mine for a term of years, the title to the minerals to vest in the grantee only after they have been removed by him, or they are leases of the described land, for a term of years, with the added right of mining during the term of the lease. In either case, the interest of the grantee or lessee in either the land or minerals is but a chattel interest, and when created by contract, as this was, it is not such an interest in land as, under our statutes, is taxable as the property of Behr & Company.

It does not appear that any of the buildings erected for mining purposes under said leases were placed in the plaintiff's list.

A second defense to this action alleges, in substance, that the board of relief was justified in increasing by $2,500 the value of the land listed by the plaintiff. In sustaining the plaintiff's demurrer to this defense at a prior session, the court (*Ralph Wheeler, J.*) appears to have held it insufficient, only because it appeared of record that the board of relief did not so increase the valuation of plaintiff's land, but added thereto the garnet quarry. This was not an adjudication of any question afterwards decided by the trial court.

The voluntary appearance of the plaintiff before the board of relief where, without objection to the notice he had received, he was fully heard upon the merits of the matter in question, obviated any defect in the notice required by statute (§ 2347), and all evidence tending to show that the plaintiff was inconvenienced by reason of the shortness of the notice was properly rejected. *People* v. *Sherman,* 83 Ill. 165 ; *Hale* v. *People,* 87 id. 72.

The complaint alleges, in substance, that the board of relief gave no other notice or announcement of its decision than by returning to the town clerk's office on the 28th of February, 1902, the book prepared by the assessors as the abstract of the list of taxpayers, with the certificate of the board of relief attached thereto, stating that the alterations, additions and deductions made by the board were as appeared in said book.

We know of no statute which makes the return of such book to the town clerk's office, or the announcement by the board of its decision, such a failure to complete its duties by the fourth Monday of February, as required by § 2346 of the General Statutes, Rev. 1902, as will render its action in adding the garnet quarry to the plaintiff's list void. Nor is the validity of the act of the board of relief, in adding the garnet quarry to the plaintiff's list, affected by the fact 'that it was also erased from the list of Behr & Company, although they did not appear before the board as provided by § 2348

of the General Statutes, Rev. 1902. *Ives* v. *Goshen*, 65 Conn. 456, 460.

As it appears from the leases themselves that the plaintiff was the owner of the quarry in question, he could not have been injured by the evidence admitted, against his objection, that he listed it as his own in 1899 and 1900.

There is no error.

In this opinion the other judges concurred.