IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### NOVEMBER TERM, 1900.

JOHN VERNOU BOUVIER, JR., v. BALTIMORE AND NEW YORK RAILROAD COMPANY.

Argued June 12, 1900—Decided November 12, 1900.

1. Upon a conveyance in fee on a condition subsequent at common law the entire fee passed and nothing remained in the grantor but a right of entry for the breach of the condition.
2. This right of entry for condition broken could only be exercised at common law by the grantor or his heirs, or by the successors of a body politic where the grant was made by a corporation.
3. The "Act to authorize the transfer of estates in expectancy," passed March 14th, 1851, has altered the rule of the common law in this respect, and by this statute the mere right of entry at common law was converted into an actual estate, to be devised, assigned, conveyed or charged as other estates, and to vest in the grantee or devisee the same right and estate as the party originally entitled thereto, or his heirs, would have been entitled to. This act was repealed in 1898 (*Pamph. L., pp.* 670, 713), and re-enacted as section 11 of an act entitled "An act concerning conveyances." This change in the statute can have no effect where the party claiming the forfeiture of an estate by breach of a condition subsequent has succeeded to the estate under a deed of conveyance.

313

4. By the common law, the breach of a condition subsequent did not *ipso facto* produce a reverter of the title; the title in the grantee could only be divested by an actual entry for condition broken. This common law rule is not in force in this state, and in case of the forfeiture of an estate upon condition, an actual entry upon the land is not necessary in order to maintain an action of ejectment. The right to enter only is required to sustain the action.

5. The breach of a condition works a forfeiture of the estate and gives the grantor a right to recover possession, notwithstanding the deed expresses a pecuniary consideration.

6. Where no time is limited for the performance of a condition which is executory and in the affirmative, the grantee is allowed a reasonable time within which to perform the condition "according to the thing so to be done."

7. An owner of land conveyed a parcel of it to a railroad company. The consideration named in the deed was the covenants and agreements therein contained, to be done and performed by the company, its successors and assigns, and the sum of $1,191 paid to the grantors. The condition expressed in the deed was that the grantee should forthwith from the date of the deed begin to and lay out, make, construct and keep in repair and forever thereafter maintain a double-track railway upon and over the said strip of land, and that the company should make, erect and build within three months after the completion of laying the tracks over the route of the said railway company, and thereafter maintain a passenger station upon the aforesaid piece of land where the same, at the northwesterly part thereof, is more than one hundred feet wide; with a proviso in the deed that if the company should refuse and neglect to lay, make, construct and keep in repair and thereafter maintain a double-track railway over and upon said lands, or should neglect or refuse to locate, build and maintain thereafter a passenger station upon the portion thereof as therein described and required, then and in either of such cases, it should or might be lawful for the parties of the first part, their heirs, executors, administrators or assigns, to re-enter, repossess and enjoy the said lands and premises as in their former estate. *Held,* that this deed conveyed a fee on a condition subsequent.

8. In dealing with a special verdict the court will draw conclusions of law from the facts found, but will not draw conclusions of fact from the evidence. The material facts relied on must be expressly found.

9. Where a special verdict does not find the material facts so that the plaintiff is not entitled to a judgment, and finds the evidence from which a material fact may be inferred, judgment should not be given for the defendant. In such cases the proper practice is to award a *venire de novo.*

In ejectment.   On special verdict.

This suit was tried in the Circuit Court of the county of Union. A special verdict was taken, which was returned to this court by the *postea*. . The plaintiff now applies to this court for judgment in his favor upon this special verdict. The special verdict is as follows:

"Afterwards, that is to say, on the 15th day of May, in the year 1900, at a Circuit Court held at Elizabeth, in and for the county of Union, before his Honor, Bennet Van Syckel, one of the Justices of the Supreme Court of Judicature of the State of New Jersey, according to the form of the statute in such case made and provided, come as well the within named John Vernou Bouvier, Jr., plaintiff, as the within named, the Baltimore and New York Railway Company, defendant, by their respective attorneys within named, and the jurors of the jury being summoned to try the said issue also came, who to try the truth of the matters within contained being chosen, tried and sworn, on their oaths say, that on and for some time prior to the 22d of March, 1889, Frederick A. Reichard and William H. Hume, owned and possessed, as tenants in common, of a tract of land in the township of Linden, in the county of Union, consisting of about one hundred acres; that on the day aforesaid the said Reichard, who was then unmarried, and the said Hume and wife, by deed under their respective hands and seals, which said deed is marked *Exhibit No.* 1, May 15th, 1900, a true copy of which is annexed hereto, returned herewith and made part hereof, granted a portion of the said land to the defendant company, consisting of five and fifty-two hundredths acres, more or less, which said portion was a strip of about a quarter of a mile in length, and for the most part one hundred feet in width, although the westerly end spread out to a width of one hundred and eighty feet, or thereabouts, making a triangular area north of the one hundred feet strip on the westerly end, of sixty-one hundredths of an acre, which is shown on map produced by the defendant company and marked *Exhibit No.* 2, May 15th, 1900, a true copy of which is annexed hereto, returned herewith and made part hereof.

"And the jurors aforesaid, upon their oaths further say, that on the 28th day of June, 1893, the said Frederick A. Reichard granted his equal, undivided one-half in the remaining premises or tract out of which the conveyance was made to the defendant company as aforesaid, to William H. Salter, by deed of that date, acknowledged the same day and recorded October 19th, 1894, in the Union county clerk's office, which said deed was marked *Exhibit No. 2*, May 15th, 1900, a true copy of which is annexed hereto, returned herewith and made part hereof, and in which said deed the premises conveyed to the railroad company were included in the description and the deed was made subject to the deed from Reichard and Hume to the railroad company, and the deed contained an express assignment of all the rights of the grantor under the deed to the railroad company, and under the conditions and covenants therein contained.

"And the jurors aforesaid, on their oaths further say, that on the 16th day of October, 1894, the said William H. Salter granted the undivided half of the premises conveyed to him by the last-mentioned deed to Edith M. Sergent and A. Paluel De Marmon, by deed of that date, acknowledged October 16th, 1894, and recorded in the Union county clerk's office, November 20th, 1894, which said deed was marked *Exhibit No. 4*, May 15th, 1900, a true copy of which is annexed hereto, returned herewith and made part hereof, and which deed purports to convey the same premises as the deed last above mentioned, and also purports to assign and transfer the right of the grantor in the premises conveyed to the railroad company, and in the covenants and conditions contained in the deed to the railroad company.

"And the jurors aforesaid upon their oaths further say that some time subsequent to the last conveyance the tenants in common of the remaining tract out of which the conveyance to the railroad company was made, caused partition of the same to be made by the Court of Chancery of New Jersey, and that the bill of complaint in said case asked for a sale or partition of the interests of the parties in the property con-

veyed to the railroad company by the deed first mentioned
as set forth in the abstract of the bill annexed hereto, and
made a part hereof, and that such proceedings were had in
said partition suit that the Chancellor of the State of New
Jersey ordered the tract of five and fifty-two hundredths acres
conveyed to the railroad company to be sold, and the same
was sold by Roderick Byington as special master on the 22d
day of November, 1896, to Edith M. Sergent and A. Paluel
De Marmon, and a deed was given to them by the said Rod-
erick Byington, special master, as aforesaid, bearing date
on the day last aforesaid, acknowledged October 1st, 1896,
and recorded in the Union county clerk's office, October 9th,
1896, which said deed was marked *Exhibit No. 5*, May 15th,
1900, a true copy of which is annexed hereto, returned here-
with and made part hereof.

"And the jurors aforesaid upon their oaths further say that
on October 16th, 1899, the said Edith M. Sergent and hus-
band and A. Paluel De Marmon executed and delivered a deed
to the plaintiff purporting to convey the premises conveyed
to them by the said master's deed, and that the said deed
from Sergent and husband and De Marmon to the plaintiff,
bears date October 16th, 1899, was acknowledged October
18th, 1899, and was recorded in the Union county clerk's
office December 28th, 1899, and is marked *Exhibit No. 6*,
May 15th, 1900, a true copy of which is annexed hereto,
returned herewith and made part hereof.

"And the jurors aforesaid upon their oaths further say that
on the 19th day of November, 1888, the defendant corpora-
tion was organized by making and filing in the office of the
secretary of state a certificate under an act of the legislature
of the State of New Jersey, entitled "An act to authorize the
formation of railroad corporations and regulate the same,"
approved April 2d, 1873, and the acts supplementary to and
amendatory of the same, a certified copy of which was pro-
duced and marked *Exhibit No. 7*, May 15th, 1900, a true
copy of which is annexed hereto, returned herewith and made
part hereof.

"And the jurors aforesaid upon their oaths further say that on the 18th day of December, 1888, the defendant company filed in the office of the secretary of state a location of the route of their railroad, a certified copy of which was produced and marked *Exhibit No.* 8, May 15th, 1900, a true copy of which is annexed hereto, returned herewith and made part hereof, which said route is about five and one-half miles in length.

"And the jurors aforesaid upon their oaths further say that shortly after the conveyance marked *Exhibit No.* 1, the defendant company began the construction of a railroad along and over the route laid down on *Exhibit* 8, and had constructed the same so far as was necessary to run trains over it, on July 1st, 1890; that so far as then constructed the road consisted of one continuous track extending from the Central railroad of New Jersey, near Cranford, to the state line on Staten Island Sound, and the second track extending from the Central railroad of New Jersey, near Cranford, to a point near land of one Kleinfelder, a total distance of about three thousand nine hundred feet.

"And the jurors aforesaid upon their oaths further say that in the preparation of the said roadbed it was graded throughout its entire length of sufficient width to admit of the laying of two tracks, except for a distance of four thousand feet at the easterly terminus where a trestle was constructed; that double bridges were constructed over the Pennsylvania railroad where the route of the defendant's railroad crossed the same, and over three small creeks, and that single bridges were constructed over the Long Branch division of the Central railroad of New Jersey, and over South Front street, in the city of Elizabeth, and that said road is constructed on a trestle from a point to the west of the Long Branch railroad all the way to the Arthur Kills bridge; that said trestle is single and the two last-named bridges are in it.

"And the jurors aforesaid upon their oaths further say that between July 1st, 1890, and December 1st, 1891, the defendant company constructed a second track from the westerly

end of the approach to the Arthur Kills bridge, which said approach began about four thousand feet from the bridge, and continued said construction of said second track westward, a distance of three thousand three hundred and fifty-five feet; that said company also within that time continued the second track constructed during the preceding year on the westerly end of said route, from the easterly end thereof, to a point on the property conveyed by *Exhibit No.* 1, which point is two hundred and sixteen feet west of Martin's run, as shown on the map, *Exhibit No.* 2, said construction being two thousand two hundred feet in length.

"And the jurors aforesaid upon their oaths further say that since the completion of this construction no other tracks have been laid by the defendant company on the line of said road, excepting that it has put in sidings at the Cranford end thereof, for the purpose of increasing its storage yard, and also near the said Cranford end for the purpose of connecting with the Lehigh Valley railroad.

"And the jurors aforesaid upon their oaths further say that the defendant company, ever since it began the operation of its said road, has continued to and now does operate the same as a coal and freight road; that it has never operated the same as a passenger road, nor carried passengers, except upon excursions; that it has never constructed any passenger stations along the line of its route, and has never constructed a station on the premises described in *Exhibit No.* 1; that it has not done any work in the construction or extension of its road since December 1st, 1891, except as aforesaid.

"And the jurors aforesaid upon their oaths further say that the second track, constructed during the years 1890 and 1891, has been in constant use since its construction as sidings.

"But whether or not upon the whole matter aforesaid, by the jurors aforesaid, in form aforesaid, found the defendant was guilty of the injury whereof the said plaintiff hath complained in his declaration, or of any part thereof, the jurors aforesaid are altogether ignorant, and therefore they pray the

advice of the court here, and if upon the whole matter aforesaid it shall seem to the said court that the defendant is guilty of the injury whereof the said plaintiff hath complained in his declaration, then the jurors aforesaid, upon their oaths aforesaid, say that the said defendant is guilty of the injury whereof the said plaintiff hath complained in his declaration, and in that case they assess the damages of the said plaintiff, by reason thereof, over and above his costs and charges by him about his suit in this behalf expended, to six cents; but if upon the whole matter aforesaid, it shall seem to the court that the defendant is not guilty of the injury whereof the said plaintiff hath complained in his declaration, then the jurors aforesaid, upon their oaths aforesaid, say that the said defendant is not guilty of the injury whereof the said plaintiff hath complained in his declaration or any part thereof."

Before DEPUE, CHIEF JUSTICE, and Justices LUDLOW and FORT.

For the plaintiff, *Skinner & Ten Eyck.*

For the defendant, *Edward Q. Keasbey.*

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE. Frederick A. Reichard and William H. Hume were seized in fee as tenants in common of a tract of land in the township of Linden, in the county of Union, containing about one hundred acres. By a deed bearing date March 22d, 1889, they conveyed to the defendant in fee a portion of the said tract, consisting of a strip of about a quarter of a mile in length, for the most part one hundred feet in width, and at the westerly end of the width of about one hundred and eighty feet; containing in all about five and fifty-two hundredths acres. On the 28th of June, 1893, Reichard granted and conveyed his equal undivided one-half part of the tract to William H. Salter, in which deed

the premises conveyed to the railroad company were included in the description, subject, nevertheless, to the conveyance from Reichard and Hume to the railroad company. By this deed the party of the first part did assign, transfer and set over and grant unto the party of the second part, his heirs and assigns, all his rights, claims and interests of, in and to the premises conveyed to the Baltimore and New York Railroad Company, and of, in and to all and every the covenants, agreements and conditions on the part of the railroad company therein specifically set forth, and the land therein described, to which the same was subject. On October 16th, 1894, Salter conveyed to Edith M. Sergent and A. Paluel De Marmon the same undivided half of the said premises, subject to the conveyance to the railroad company and including the same rights and interests. Subsequently there was a suit in chancery between Edith M. Sergent, A. Paluel De Marmon and William H. Hume for a partition of the remaining lands and for a partition or sale of their interests in these premises. In the partition suit the Chancellor ordered the said tract of five and fifty-two hundredths acres embraced in the conveyance to the railroad company to be sold, and the same was sold by Roderick Byington, special master, on the 22d of November, 1896, to Edith M. Sergent and A. Paluel De Marmon, and a deed therefor was made to them by the master. On the 16th of October, 1899, Mrs. Sergent and De Marmon executed and delivered a deed to John Vernou Bouvier, Jr.; the plaintiff in this suit, conveying the premises conveyed to them by the master's deed. In virtue of the above chain of title from Reichard and Hume, Bouvier brought an action of ejectment against the railroad company to recover the possession of the premises. His claim to recover is based upon an allegation of a breach of the conditions upon which the premises were conveyed to the defendant.

The deed from Reichard and Hume to the defendant conveyed a fee upon a condition subsequent. Upon such a conveyance at common law the entire fee passed and nothing remained in the grantor but a right of entry for the breach

of the condition. This right of entry for condition broken could only be exercised by the grantor or his heir. "It is a rule of the common law that none may take advantage of a condition in a deed but parties and privies in right and representation, as the heirs of natural persons and the successors of politic persons; and that neither privies nor assignees in law, as lords by escheat; nor in deeds, as grantees of reversions; nor privies in estate, as he to whom the remainder is limited, shall take benefit of entry or re-entry by force of a condition." *Shep. Touch.* 149; 2 *Co. Litt.* 214a; *Southard* v. *Central Railroad Co.,* 2 *Dutcher* 13, 21. But an act of the legislature passed March 14th, 1851, entitled "An act to authorize the transfer of estates in expectancy," has altered the rule of the common law in this respect. That act provides that any person may devise, convey, assign or charge by any deed any contingent or executory interest, right of entry for condition broken, or other future estate or interest in expectancy, as he may now or shall hereafter be entitled to, or presumptively entitled to, in any lands, tenements, hereditaments, &c., although the contingency on which such right, estate or interest are to vest may not have happened. The statute further enacts that "every person to whom any such interest, right or estate shall be devised, conveyed or assigned, his heirs and assigns, shall, on the happening of such contingency be entitled to stand in the place of the person by whom the same shall be devised, conveyed or assigned, his heirs or assigns, and to have the same interest, right or estate, or such part thereof, as shall be devised, conveyed or assigned to him, and the same actions, suits and remedies therefor as the person originally entitled thereto, or his heirs would then have been entitled to, if no conveyance, devise, assignment or other disposition thereof had been made." *Pamph. L.* 1851, *p.* 282; *Rev., p.* 167. In 1898 this act was repealed and for some reason re-enacted without its original title as section 11 of an act entitled "An act concerning conveyances." *Pamph. L.* 1898, *pp.* 670, 713. This change in the statute has no effect in this case— the plaintiff claiming title under a deed of conveyance. By

this statute the mere right of entry at common law was converted into an actual estate, to be devised, assigned, conveyed and disposed of as other estates, and to vest in the grantee or devisee the same right and estate as the party originally entitled thereto, or his heirs, would have been entitled to. *Southard* v. *Central Railroad Co., 2 Dutcher* 21; *Cornelius* v. *Ivins, Id.* 376.

In this case the original grantors were tenants in common. Incident to their joint estate was the right of partition, and in the proceeding for partition their interest in the premises was sold by order of the court. Whatever right or interest they had in the premises was transferred and conveyed in this judicial proceeding, and the grantee in the deed of the master acquired their title, and, by force of the statute, all the rights that the original owners had in the premises, including a right of entry. The railroad company was not a proper or necessary party in the partition suit. It had no interest that could be affected one way or the other by the transfer of the title of the original owners to the purchaser at the master's sale. There is no infirmity in this respect in the title of the plaintiff or in his right to maintain this action.

It was also contended by the defendant that ejectment would not lie unless the action was preceded by an actual entry. By the common law the breach of a condition subsequent did not *ipso facto* produce a reverter of the title; the title in the grantee could only be divested by an actual entry for condition broken. This common law rule is not in force in this state. This court has held that in case of the forfeiture of an estate upon condition an actual entry upon the land is not necessary in order to maintain an action of ejectment. The right to enter—not an actual entry— only is required to sustain the action. *Cornelius* v. *Ivins, supra.* In that case Chief Justice Green said: "The practice has been long settled; and as an actual entry on the land is but a formal and unmeaning ceremony, devoid of any practical meaning and unattended by any real advantage,

there can be no utility in enforcing it, however strong the technical reasons in its support."

The deed to the railroad company expresses as the consideration of the grant the covenants and agreements therein contained to be done and performed by the company, its successors and assigns, and the sum of $1,191 paid to the grantors. The fact that this deed expresses a pecuniary consideration does not prevent a recovery for the breach of the condition expressed in it. The estate granted, on whatever consideration the grant was made, was expressly subject to the condition contained in the deed. At common law, upon an entry by the grantor for breach of condition, his entry defeated the livery made on the creation of the estate in the grantee, and consequently all subsequent estates and remainders dependent thereon were extinguished. 4 *Kent Com.* 127. In *Cornelius* v. *Ivins,* 2 *Dutcher* 376, 384, the deed expressed a pecuniary consideration. It also contained a condition whereby the land should revert to the grantor on the breach of the condition. It was held by this court that a breach of the condition worked a forfeiture of the estate and gave the grantor a right to recover possession, notwithstanding the deed expressed a pecuniary consideration.

The condition on which the estate was granted was subsequent and executory; the estate was executed in the grantee, but the continuance thereof depended upon the breach or performance of the condition to which it was subject. This condition was in the affirmative—that the grantee should forthwith from the date of the deed begin to and lay out, make, construct and keep in repair and forever thereafter maintain a double-track railway upon and over the said strip of land, and that the company should make, erect and build within three months after the completion of laying the tracks over the route of the said railway company, and thereafter maintain, a passenger station upon the aforesaid piece of land where the same, at the northwesterly part thereof, is more than one hundred feet wide. It was further provided in the deed that if the company should refuse and neglect to lay, make, construct and keep in repair and thereafter

maintain a double-track· railway over and upon said lands, or should neglect or refuse to locate, build and maintain thereafter a passenger station upon the portion thereof as therein above described and required, then, and in either of such cases, it should or might be lawful for the parties of the first part, their heirs, executors, administrators or assigns, to re-enter, repossess and enjoy the said lands and premises as in their former estate, &c.

It appears by the special verdict that the railroad company located the route of its railroad over the premises, and that the entire length of the company's route is about five and one-half miles, of which about one-quarter of a mile is upon the premises in question. The special verdict certifies that the company, shortly after the conveyance to it, began the construction of a railroad along and over its route, and constructed the same so far as was necessary to run trains over it, on July 1st, 1890; that so far as then constructed the road consisted of one continuous track extending from the Central railroad of New Jersey, near Cranford, to the state line on Staten Island Sound, and the second track extending from the Central railroad, near Cranford, to a point near the land of one K., a total distance of about three thousand nine hundred feet. The special verdict further certifies that the roadbed was graded throughout its entire length of sufficient width to admit of the laying of two tracks, except for a distance of about four thousand feet at the easterly terminus, where a trestle was constructed; that double bridges were constructed over the Pennsylvania railroad where the route of the defendant's railroad crossed the same, and over three small creeks, and that single bridges were constructed over the Long Branch division of the Central railroad, and over South Front street in the city of Elizabeth, and that said road is constructed on-a trestle from a point to the west of the Long Branch railroad, all the way to the Arthur Kills bridge; that said trestle is single and the two last-named bridges are in it. The special verdict further certifies that between July 1st, 1890, and December 1st, 1891, the defendant company constructed a second track from the westerly

end of the approach of the Arthur Kills bridge, which said approach began about four thousand feet from the bridge, and ·continued said construction of said second track westward, a distance of three thousand three hundred and fifty-five feet; that the company within that time continued the second track constructed during the preceding year on the westerly end of said route, from the easterly end thereof, to a point on the property conveyed two hundred and sixteen feet west of Martin's run, said construction being two thousand two hundred feet in length. The special verdict further certifies that since the completion of the construction last mentioned no other tracks have been laid by the defendant company on the line of said road, excepting that it has put in sidings at the Cranford end thereof for the purpose of increasing its storage yard, and also near the said Cranford end for the purpose of connecting with the Lehigh Valley railroad; that the said company has not done any work in the construction or extension of its road since December 1st, 1891, except as aforesaid; that ever since it has been operating its road it has continued to and now does operate the same as a coal and freight road; that it has never operated the same as a passenger road, nor carried passengers, except upon excursions; that it has never constructed any passenger stations along the line of its route, and has never constructed a station on the land described in the deed; that the second track constructed during the years 1890 and 1891 has been in constant use since its construction as sidings.

The material question arises upon this branch of the case whether in this special verdict there is such a finding of a breach of condition as will justify a judgment for the plaintiff. There is no time limited for the performance of the condition on which the conveyance was made. The work of constructing and putting in operation a railroad necessarily requires time, more or less, according to circumstances. Where no time is limited for the performance of a condition which is executory and in the affirmative, such as to do some act or acts or construct works, there the grantee is allowed a reasonable time within which to perform the condition,

"according to the thing so to be done." 2 *Com. Dig.* 333, tit. "*Condition*," *G* 5. In 2 *Co. Litt.* 208*b*, 210*a*, are stated the "divers diversities" that arise in that respect, depending upon the nature of the condition to be performed. *Shep. Touch.* 133, 135; 5 *Vin. Abr.* 194, tit. "*Condition*" (*Eb*); 2 *Bac. Abr.* 323, tit. "*Condition*," *P* 3; *Carter* v. *Carter*, 14 *Pick.* 424, 428; *Ross* v. *Tremain*, 2 *Metc.* 495. In a devise of lands to a town for a school-house, it was held that the vested estate would be forfeited on non-compliance within a reasonable time with the condition, and that a neglect for twenty years to comply with the condition was a forfeiture—the town having done nothing towards performance. *Hayden* v. *Stoughton*, 5 *Pick.* 528, 534; 4 *Kent* 125. In the absence of an express limitation a condition subsequent must be performed within a reasonable time. 6 *Am. & Eng. Encycl. L.* (*N. S.*) 505. A delay of twenty-nine years in commencing to build a church was held to be unreasonable. *Upington* v. *Corrigan*, 69 *Hun* 320. The conduct of the party entitled to have performance of the condition has also an influence on this subject. By the common law, as has already been mentioned, one of the reasons for requiring an entry before suit is that the feoffer or grantor may waive the condition at his pleasure. 2 *Co. Litt.* 218*a*. In this case now in hand the company promptly commenced work of performing the condition on which the grant was made, and prosecuted it with reasonable diligence down to December, 1891. It cannot be said as a question of law that the fact that after December, 1891, the company has not laid other tracks on the line of its road, except in putting in sidings at Cranford for a storage yard and for connections with the Lehigh Valley railroad, is *per se* a forfeiture of the company's rights under its deed—the company being engaged in operating its road for a legitimate purpose under its charter, and not having abandoned its effort to construct and complete its entire road. In some cases inaction on the part of the grantor has been held to be evidence of consent or acquiescence that precluded his right to enter for condition broken. *Ludlow* v. *New York and Harlem Railroad Co.*, 12 *Barb.* 440; *Hooper* v. *Cummings*, 45 *Me.* 359.

It is apparent from an examination of the decisions that where no time is mentioned, and the grantee is entitled to a reasonable time for the performance of the condition, according to its nature, the question of reasonable time must necessarily be for the jury. In the special verdict returned with the *postea* in this case that issue has not been found. The special verdict sets out only facts which were competent evidence tending to show that there might have been a breach of condition by the defendant; but the material fact on which a forfeiture of the estate was incurred is not found. In dealing with a special verdict the court will draw conclusions of law from facts found, but will not draw conclusions of fact from evidence. The material facts relied on must be expressly found. *Behring* v. *Somerville, 34 Vroom* 568.

The plaintiff is not entitled to judgment on this special verdict, nor should judgment be given for the defendant. In such cases the proper practice is to award a *venire de novo*. It is so ordered.