# Wytheville.

LAUREL CREEK COAL AND COKE CO. v. BROWNING AND OTHERS.

### JUNE 27, 1901.

1. LESSOR AND LESSEE—*Rights of Way—Estoppel.*—The refusal of one of several joint lessors to sell to the lessee a right of way for a railway over other lands not leased does not estop such lessor from taking advantage of a provision in the lease rendering it void if a right of way for a railway to the leased premises is not obtained by condemnation or otherwise in a given time. The mere existence of a lease does not impose an obligation to grant the right of way, nor estop the lessor from a *bona fide* effort to protect his property from serious injury.

2. CHANCERY JURISDICTION—*Complete Relief—Partition.*—When a court of equity acquires jurisdiction of a cause for any purpose, it will retain it and do complete justice between the parties, enforcing, if necessary, legal rights, and applying legal remedies to accomplishing that end. This is especially true in suits for partition.

3. CHANCERY PRACTICE—*Cancellation—Failure of Purpose of Contract—Inability to Perform.*—Where a contract has failed of its purpose by the default of one of the parties, occasioned by either his inability or unwillingness to comply with its provisions, a court of equity, having acquired jurisdiction of the parties and the subject matter, will not hesitate, at the instance and for the relief of a party not in default, to cancel the contract, if it stands as a barrier in the way of doing complete justice in the cause.

Appeal from a decree of the Circuit Court of Tazewell county, pronounced September 9, 1899, in a suit in chancery, wherein appellees, Browning and wife, were the complainants, and the appellant and others were the defendants.

*Affirmed.*

The opinion states the case.

*A. J. & S. D. May, Douglass H. Smith,* and *Joseph S. Clark,*
for the appellant.

*Henry & Graham,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

The property involved in this litigation consists of three
adjoining tracts of land situated on Laurel creek, Tazewell
county, Virginia, embracing in the aggregate a surface area of
363⅞ acres.   This land was, on June 17, 1895, held in fee simple
as follows:

Hattie E. Stras and A. C. Spotts were the owners of 150 acres,
and they, jointly with H. C. Alderson and T. H. Wickham, were
the owners of 168⅓ acres, and W. L. Read was the owner of a
moiety of 90 acres, the residue thereof.

The chief value of these lands consists of the coal deposits
which they contain, being underlain with what is known as the
" Pocahontas Seam of Coal."

On the date referred to, the constituent owners, with the view
of having the coal mined and operated, determined to combine
their interests, and for that purpose united in a deed by which
they conveyed to B. W. Stras, in trust, their respective holdings
in severalty, and took in lieu thereof certain specified undivided
interests in the entire tract, the estimated coal bearing area of
which was fixed at 343 acres.   Without giving in detail its
stipulations, the deed provides that the trustee shall lease the
entire property for coal mining and coal coking purposes, collect
the royalties, and distribute the net proceeds among the owners
in proportion to their respective interests.

On the same day, in accordance with the provisions of the
trust deed, and in furtherance of the scheme adopted, the trustee
leased the entire property to the Laurel Creek Coal and Coke

Company, a private corporation, for a term of thirty years, which lease was ratified, approved, and confirmed by all the owners affixing their signatures and seals thereto, and duly acknowledging the same.

By the terms of the lease, the Laurel Creek Coal and Coke Company agreed to pay certain royalties on the coal which it should mine from the property, and further stipulated as follows:

" The carrying out of this contract by the lessee is conditioned upon its being able to secure the condemnation of a right of way for a railroad by the Norfolk and Western Railroad Company, or by some other company possessing the power to condemn for railroad purposes; but the said lessee agrees and binds itself that the said condemnation proceedings are to be begun within sixty days from the date of this contract by the Norfolk and Western Railroad Company, or other company possessed of the power to condemn for railroad purposes, and that such condemnation proceedings shall be prosecuted with due diligence to completion; and the said lessee, or its assigns, to have until the first day of September, 1896, to complete their other preparations for mining, provided the said condemnation proceedings be instituted and diligently prosecuted as above mentioned, and the mining of the coal is to begin not later than September 1, 1896; but if the lessee fails to procure said Norfolk and Western Railroad Company, or other company with power to condemn as above mentioned, to begin condemnation proceedings within the aforesaid sixty days, or such condemnation proceedings, having been begun by such company, it fails to prosecute the same with due diligence, or said lessee fails to begin shipping coal by the first day of September, 1896, as above provided, then, in the event of any or either of these conditions being broken, this contract is to be void at the option of the lessor."

Between the western terminus of the Pocahontas Branch of the New River Division of the Norfolk and Western Railroad

Company and the leased premises is located a tract of land containing about 100 acres, owned by the appellee, Ollie H. Browning, wife of James S. Browning. This tract is in the form of a parallelogram, about one and one-eighth miles in length, and divided about equally by Laurel creek, which flows through it from west to east. This land is also underlain by coal, which appellees have been mining and operating for several years.

The construction of a railroad to the leased premises by the lessee having a time-limit attached, and being absolutely essential as a means of transportation for its coal output, and the only practicable route being through the lands of the Brownings, the Laurel Creek Coal and Coke Company endeavored to secure a right of way by contract with them. Failing in this it opened negotiations with the receivers of the Norfolk and Western Railroad Company, who, at the November term, 1895, procured a decree from the Circuit Court of the United States for the Eastern District of Virginia, authorizing them to extend their branch line to the leased premises, provided the Laurel Creek Coal and Coke Company should give such indemnity as was satisfactory to the receivers for the payment, by the lessee company, without any obligation or agreement on the part of the receivers, to reimburse the railroad company all expenses, damages, and liability that might be incurred for securing for said extension a right of way, and constructing a railroad thereon.

It is admitted by C. E. F. Burnley, president of the Laurel Creek Coal and Coke Company, that his company is unable to comply with the terms imposed by the receivers through their solicitor, Joseph I. Doran, under the provisions of said decree, and that all negotiations on the subject ceased and determined in April, 1896; that no effort was ever made by the Norfolk and Western Railroad Company, or any other public corporation, to condemn a right of way through the lands of the Brownings in the County Court of Tazewell county, the only tribunal having original jurisdiction in the premises; and that no further effort

had been made by the Laurel Creek Coal and Coke Company
since April, 1896, to comply with this indispensable provision of
the lease, and that none other would be made by it.

On August 7, 1895, James S. Browning and wife, and the
trustees of the Southwest Improvement Company purchased the
interest of Hattie E. Stras and A. C. Spotts in the land in con-
troversy; and on April 29, 1898, James C. Browning purchased
the interest of H. C. Alderson therein. The interest of T. H.
Wickham had been sold in a suit to enforce a vendor's lien
thereon, and purchased by Edward W. Clark, Henderson M.
Bell and Joseph I. Doran, trustees of the Flat Top Coal Land
Association. In September, 1895, B. W. Stras, trustee in the
original deed of June 17, 1895, and lessor in the contract of
lease of the same date, tendered his resignation to the County
Court of Tazewell county, which was accepted, and no effort
has been since made to secure the appointment of another trustee
in his stead.

This was the status of affairs in July, 1898, when Browning
and wife filed a bill in the Circuit Court of Tazewell county
against all parties interested in the property in controversy, the
prayer of their bill being that the deed of trust and contract of
lease be declared null and void, and that they be relegated to the
title and interests originally held by their vendors, and that a
proper partition be made of the land.

W. L. Read, the only original owner who had retained his
interest in the land, answered the bill, and united in its prayer.

The Laurel Creek Coal and Coke Company and T. H. Wick-
ham filed separate demurrers and answers. The former insisted
that it had in good faith endeavored to comply with the terms
and conditions of the lease, and to that end had expended $16,000
in improving the property, and in expenses of litigation. It
averred that it had been obstructed by James S. Browning, who
succeeded in defeating the efforts of lessee to secure a right of
way and to construct a railroad as required by the lease.

The Circuit Court was of opinion that the constituent owners, and their vendees, should be remitted and restored to their respective rights and ownership in the lands as they stood before the making of the trust deed, and that the lease should not stand in the way of a partition, to which it decided the parties were entitled. It, therefore, declared the lease at an end and void, made proper provision for ascertaining the value of the improvements put upon the property, and decreed partition of the land, and it is from this decree that an appeal was allowed by one of the judges of this court.

It has been earnestly argued that the deed of trust of June 17, 1895, is void as violating the rule against perpetuities, and imposing an unlawful restraint on alienation, and that the deed being void, the lease must also fall. But, in the view which this court takes of the cause, it is unnecessary to consider either of these contentions.

It is apparent from the testimony, indeed it seems to be conceded, that the Laurel Creek Coal and Coke Company has wholly failed to comply with the vital stipulation of the lease in relation to the construction of a railroad to its property. It attributes this failure to the alleged unwarranted opposition of James S. Browning, and insists that he should be estopped from taking advantage of it. The conflict between appellants and the Brownings has, throughout this litigation, been acrimonious in the extreme. Without undertaking to pass upon the relative merits of that controversy, it is sufficient to remark, that there are no such relations, contractual or other, existing between them, as to impose upon the Brownings any legal obligation to allow appellants a right of way over their lands. In that respect they stood at arms' length, and no lawful resistance by the Brownings, made in good faith, to prevent an injury to their lands, outside the leased premises, in condemning it for railroad purposes, can operate an estoppel upon their right to demand partition of their interests in the lands covered by the lease.

The fact that the estimated cost of condemnation and construction of a railroad for one and one-eighth miles through their land is $43,000, would seem to indicate that the contention of the Brownings, that the road would inflict serious injury upon their property, is not without merit.

The trial court was confronted with these conditions: The trustee and lessor, B. W. Stras, had resigned his trust, and no effort had been made to appoint a new trustee; practically all the beneficial owners of the leased premises desired a cancellation of the lease and partition of the land; the lessee had wholly failed to comply with the requirement in relation to the construction of a railroad, and admitted its inability to comply which failure by express condition of the contract rendered it void at the option of the lessor and, confessedly, defeated the sole object which the parties had in contemplation in making the lease, and rendered that object impossible of performance. The lessee had abandoned and relinquished all its rights under the contract to one George L. Easterbrooke, Jr., a clerk residing in the city of Philadelphia, who was never on the property, and is not shown to have paid any consideration for the assignment of the lease, or to possess either the capacity or means to comply with its stipulations. Virtually, there was neither lessor nor lessee. Upon this state of facts, it is not perceived how the Circuit Court could have reached a conclusion other than it did.

The general doctrine is admitted that equity does not favor penalties and forfeitures, and will not, ordinarily, lend its active aid to enforce them, but will leave the parties to pursue their legal remedies. Nevertheless, in this State, the rule is well established, that when a court of equity acquires jurisdiction of a cause for any purpose, it will retain it, and do complete justice between the parties, enforcing, if necessary, legal rights and applying legal remedies to accomplish that end. Especially is this true of suits for partition, where, by express provision of the statute, a court of equity "may take cognizance of all questions

of law affecting the legal title that may arise in any proceeding."
Code of Va., ch. 114, sec. 2562; *Pillow* v. *S. W. Imp. Co.*, 92
Va. 144.

Where a contract has failed of its purpose by the default of
one of the parties, occasioned by either his inability or unwilling-
ness to comply with its provisions, a court of equity, having
acquired jurisdiction of the parties and subject matter, will not
hesitate, at the instance and for the relief of a party not in
default, to cancel the contract if it stands as a barrier in the
way of doing complete justice in the cause.

In the case of *Cowan* v. *Radford Iron Co.*, 83 Va. 547, which
involved *a mining lease*, the court said: "Although the lessee had
mined some of the minerals from Cowan's property, and paid
him a royalty thereon, it appearing that the lessee had ceased to
mine for an unreasonable time, the lease was set aside and
annulled." And in the later case of *Shenandoah Land, &c. Co.*
v. *Hise*, 92 Va. 238, also a case of *a mining lease*, the court held:
" If the lessee fails to discharge his duty, a court of equity will
set aside and annul the agreement," and such relief was granted
in that cause.

In dealing with this case, it was the province of the court to
ascertain the intention of the parties in making the lease; and,
for that purpose, to take into consideration their situation, the
subject matter of the agreement and the object sought to be
attained; and, if, as stated, that object had been thwarted either
by reason of the inability or unwillingness of the lessee to per-
form the contract, it was the duty of the court to annul the deed
of trust and contract of lease, and relegate the lessors and their
vendees, to their original rights.

In the case of *Armistead's Ex'ors* v. *Hartt and Others*, 97
Va. 316, the court held: " That although all the objects and
purposes of a trust have not been accomplished, yet     *     *     *
if the beneficiaries are *sui juris*, and desire the termination, a
court of equity may decree its termination. If no good purpose

will be served by a continuation of the trust, and those interested will not be benefitted, the mere objection of the trustee to its termination will be unavailing." 2 Perry on Trusts, sec. 920.

The court is of opinion that, under the law applicable to the facts and circumstances of this cause, there is no error in the decree complained of, and that it ought to be affirmed.

*Affirmed.*