𝕎𝕪𝕥𝕙𝕖𝕧𝕚𝕝𝕝𝕖.

PENCE V. TIDEWATER TOWNSITE CORPORATION.

June 10, 1920.

1. DEEDS—*Conditions Subsequent—Not Favored.*—Conditions subsequent, because they tend to destroy estates, are not favored in law, and when effective to work a forfeiture of title they must have been created by express terms or clear implication.

2. DEEDS—*Conditions Subsequent—Will be Enforced.*—If it is the clearly expressed intention of the parties to create an estate upon a condition subsequent, the courts must give effect to such intention.

3. DEEDS—*Conditions Subsequent—Covenants—Case at Bar.*—A stipulation in a deed requiring the grantee to erect upon the property conveyed within six months from the date of the deed a building to cost $750 or more, and providing that on failure to erect such building within the time specified part of the property conveyed should revert to the grantor, creates a condition subsequent and not a covenant.

4. WORDS AND PHRASES—*"Forfeiture"—Equity will not Enforce Forfeiture.*—The word "forfeiture" is variously defined in the books, and its exact signification varies more or less, according to the connection in which it is used; but one of its recognized and settled meanings is the loss of an estate in consequence of the doing or omission of some act. And this is one of the meanings in which the word is used in the time-honored aphorism that equity will not affirmatively assist in the enforcement of a forfeiture.

5. PENALTIES AND FORFEITURES—*Enforcement of and Relief Against in Equity.*—Unless requisite to the accomplishment of complete justice in a case in which jurisdiction has been properly acquired on some other grounds, a court of equity, according to well-settled rules and almost universal precedent, will have nothing to do with the enforcement of penalties and forfeitures. The function of such a court in this respect is not to enforce in any case, but to relieve against the enforcement where the circumstances warrant equitable interference.

6. CONDITIONS SUBSEQUENT—*Breach—Remedy—Ejectment—Case at Bar.*—In the instant case there was a condition subsequent

which had been broken, and, as the facts appeared in the record, the grantor had the right to a reinvestiture of the title. This right is purely a creature of law, and the remedy for the enforcement of the right is purely a legal remedy, which in modern practice, provided for in Virginia by statute, is an action of ejectment.

7. CONDITIONS SUBSEQUENT—*Effect of Breach.*—Assuming that there has been a breach of a valid condition subsequent, the estate vested in the grantee does not cease in him, and revest in the grantor *ipso facto,* but remains unimpaired in the grantee until entry, or its equivalent, by the grantor or his heirs. For the grantor or his heirs may waive the right to enforce the forfeiture; and though there has been no express waiver, and the estate of the grantee is still liable to forfeiture, the law, in favor of the vested estate, will not permit its destruction until the right to forfeit has been exercised.

8. CONDITIONS SUBSEQUENT—*Breach of—Enforcement of Forfeiture at Common Law.*—As to the mode of exercise of the right to enforce a forfeiture, the common law required, in order to divest an estate of freehold (unless the grantor was already in possession at the time of the breach), an entry on the land, in order that the estate, which had vested by entry and livery of seisin, should be divested by the equal notoriety of entry and the resumption of that seisin.

9. CONDITIONS SUBSEQUENT—*Breach of—Action of Ejectment.*—But in modern practice the forfeiture is usually enforced by the action of ejectment; and in order to bring this action no actual entry is required at common law, and it is dispensed with by the provisions of the statutory action.

10. EJECTMENT—*Enforcement of Forfeiture—Legal Title.*—The general rule is that the plaintiff in ejectment must be clothed with a legal title when he brings his suit. Nevertheless, the settled practice and the statute in Virginia (section 5530, Code of 1919) fixes the action of ejectment as the appropriate remedy for the enforcement of a forfeiture for breach of a condition subsequent, notwithstanding the fact that the estate remains in the vendee until the forfeiture is consummated.

11. CONDITIONS SUBSEQUENT—*Suit to Annul Deed for Breach of Condition Cannot be Treated as Suit to Remove Cloud from Title.*—A suit in equity to annul and rescind a deed for breach of a condition subsequent cannot be treated as a suit to remove a cloud from title, although in the instant case the Supreme Court of Appeals would so treat it if it could on its own motion to avoid the jurisdictional question, as the grantor had neither legal nor equitable title, and therefore

does not fall within the class of persons who may bring a suit to quiet title, either under the original equitable doctrine governing such suits, or under the terms of the former or present statute on the subject found in section 3058 of the Code of 1904, or section 6248 of the Code of 1919. Until the consummation of the forfeiture, the grantor in a case like this has nothing but a right of action.

12. PENALTIES AND FORFEITURES—*Jurisdiction of Equity to Enforce.* —It is well settled and familiar doctrine that a court of equity will not interfere on behalf of the party entitled thereto and enforce a forfeiture, but will leave him to his legal remedies, if any, even though the case might be one in which no equitable relief would be given to the defaulting party against the forfeiture.

13. PENALTIES AND FORFEITURES—*Jurisdiction of Equity to Enforce —Exceptions to Rule.*—Although the general rule is that equity will never actively lend its aid to enforce a forfeiture where that is the only ground of jurisdiction, yet when a court of equity acquires jurisdiction of a cause for any purpose, it will retain it, and do complete justice between the parties, even though it involves the enforcement of a forfeiture. Another exception is in regard to deeds for support and maintenance, where equity will ordinarily assume jurisdiction, because of the peculiar nature of the transaction and the situation of the parties; and there is a tendency to recognize an exception in Virginia as to mining leases.

14. APPEAL AND ERROR—*Judgment of Appellate Court.*—Under section 6365 of the Code of 1919, it is the duty of the Supreme Court of Appeals to enter such judgment, decree or order as to the court shall seem right and proper; therefore, where a complainant brings a suit in equity when his remedy is at law, the Supreme Court in reversing the decree will remand the cause to the lower court, with instructions to transfer the same to the law side for the appropriate amendment of pleadings and other proceedings in conformity with the provisions of section 6084 of the Code of 1919, notwithstanding the case was disposed of in the lower court before section 6084 became effective.

Appeal from a decree of the Circuit Court of Lunenburg county. Decree for complainant. Defendants appeal.

*Reversed.*

57

The opinion states the case.

*W. E. Fowler* and *W. E. Nelson*, for the appellant.

*N. S. Turnbull, Jr.*, for the appellee.

KELLY, P., delivered the opinion of the court.

In September, 1907, the Tidewater Townsite Corporation sold and conveyed lots 17, 18, 19, 20, 21 and 22 of Block 13, in the town of Victoria, to Mrs. A. E. Pence. The consideration recited in the deed in general terms was "one thousand dollars and other valuable considerations hereinafter set forth;" and immediately following the description of the property, there was this provision: "And further, the said A. E. Pence as a part of the consideration for this conveyance, agrees and binds himself to erect upon the property hereby conveyed within six months from the date hereof a building to cost seven hundred and fifty dollars or more, excepting in case of sickness, then the said time to be extended three months. Should the said A. E. Pence fail to erect said buildings within the time specified, then, and in that case lots Nos. 20, 21 and 22 shall revert to the said Tidewater Townsite Corporation without cost or charge to the said party of the first part."

Mrs. Pence failed to erect a building of any kind upon either of the lots. In August, 1918, the Tidewater Townsite Corporation brought this suit in equity to annul and rescind the deed as to lots 20, 21 and 22, proceeding upon the theory that the agreement to build on the property was a condition subsequent, the breach of which entitled the complainant to a cancellation of the deed and a reinvestiture of the title as to the three lots named.

The defendant demurred, assigning a number of grounds, among which were (1) that the bill alleges a

breach of a covenant for which there is an adequate remedy at law, and (2) that the bill prays for the forfeiture of the title of real estate, which equity will not actively enforce. The circuit court overruled the demurrer, and thereupon the defendant answered, proof was taken on both sides, and upon final hearing the court entered a decree holding that the agreement to build was a condition subsequent, and directing that the deed be annulled as to lots 21, 22 and 23, and the title thereto vested in the complainant. From that decree this appeal was allowed.

A number of points were raised by the assignments of error, but in our view of the case it will be only necessary to consider two questions: First, did the court err in holding that the stipulation in the deed requiring the grantee to build on the lots constituted a condition subsequent; and second, did the court err in holding that a court of equity could properly enforce the forfeiture of title arising from the breach of the condition? We will consider these two questions in their order.

[1] 1. Conditions subsequent, because they tend to destroy estates, are not favored in law, and when effective to work a forfeiture of title they must have been created by express terms or clear implication. *Millan* v. *Kephart,* 18 Gratt. (59 Va.) 1, 8; *Alexandria & Wash. R. Co.* v. *Chew,* 27 Gratt. (68 Va.) 547, 558; *King* v. *N. & W. Ry. Co.,* 99 Va. 625, 39 S. E. 701; *People's Pleasure Park Co.* v. *Rohleder,* 109 Va. 439, 444, 61 S. E. 794, 63 S. E. 981; 2 Dev. on Deeds, (3d ed.), secs. 970, 970b.

[2] But the converse proposition is equally well settled. If it is the clearly expressed intention of the parties to create an estate upon a condition subsequent, the courts must give effect to such intention. 2 Dev. on Deeds (3d ed.), sec. 970d; *Epperson* v. *Epperson,* 108 Va. 471, 475, 62 S. E. 344.

[3] The language of the deed in the instant case clearly

creates a condition subsequent. The specified consequence of the breach, namely, that the title as to lots 20, 21 and 22 shall revert to the grantor, stamps it as such. Graves' Notes on Real Property, sec. 252, p. 320, and authorities cited; 2 Min. Inst. (4th ed.), 492.

The circuit court was right, therefore, in refusing to sustain the demurrer on the alleged ground that the stipulation was a covenant and not a condition; and the further question whether, if it had been merely a covenant, the remedy at law would have been adequate, need not be considered.

2. Coming now to the second question requiring consideration on this appeal, it is insisted that inasmuch as this is a suit for the express and sole purpose of enforcing a forfeiture of the title to real estate for breach of a condition subsequent, a court of equity cannot properly grant the relief.

[4] The word "forfeiture" is variously defined in the books, and its exact signification varies more or less according to the connection in which it is used, but one of its recognized and settled meanings is the loss of an estate in consequence of the doing or omission of some act. 3 Words & Phrases, p. 2893, et seq; Idem. (2d ser.), p. 611. And this is one of the meanings in which the word is used in the time-honored aphorism, that equity will not affirmatively assist in the enforcement of a forfeiture.

[5] Unless requisite to the accomplishment of complete justice in a case in which jurisdiction has been properly acquired on some other grounds, a court of equity, according to well settled rules and almost universal precedent, will have nothing to do with the enforcement of penalties and forfeitures. The function of such a court in this respect is not to enforce in any case, but to relieve against the enforcement where the circumstances warrant equitable interference.

Accordingly we find that the discussions in the books concerning the exercise of the extraordinary powers of a court of equity in regard to penalties and forfeitures all proceed upon the fundamental proposition that the business of a court of equity in regard to these subjects is to give relief against some proceeding at law or some legal consequence resulting from a penalty or forfeiture. And it may be stated that where the authorities indicate that a court of equity recognizes the right to enforce a forfeiture, they do not usually mean that the enforcement will be affirmatively decreed in such a court, but merely that the court will not lend its aid in such cases to relieve against the enforcement. Exceptional cases have overlooked this proposition. Thus in 10 Ruling Case Law, section 86, page 337, after citing the case of *Equitable Loan, etc., Co.* v. *Waring,* 117 Ga. 599, 44 S. E. 320, 97 Am. St. Rep. 177, 62 L. R. A. 93, holding "that the law permits a man to make a contract which will result in a forfeiture, and when it is clear from the terms of the contract that the parties have so agreed, a court of law as well as a court of equity will enforce the forfeiture," the author adds: "An examination of the cases in which this broad statement is made, however, will in most instances disclose that the court of equity confined itself merely to refusing to relieve against the forfeiture provided for, thereby letting the contract itself take effect by operation of law."

[6] In the case in hand we have a condition subsequent which has been broken, and, as the facts appear in the record before us, the grantor has the right to a reinvestiture of the title. This right is purely a creature of law, and the remedy for the enforcement of the right is purely a legal remedy, which in modern practice, provided for in Virginia by statute, is an action of ejectment. 2 Min. Inst. (4th ed.) 267; Graves' Notes on Real Prop., sec. 277, and authorities cited; Code 1919, sec. 5530.

[7-9]  The law is stated by Mr. Graves (sec. 277, *supra*), with a full citation of the authorities, as follows: "Assuming that there has been a breach of a valid condition subsequent, the estate vested in the grantee does not cease in him, and revest in the grantor *ipso facto*, but remains unimpaired in the grantee until entry, or its equivalent, by the grantor or his heirs. For the grantor or his heirs may waive the right to enforce the forfeiture; and though there has been no express waiver, and the estate of the grantee is still liable to forfeiture, the law, in favor of the vested estate, will not permit its destruction until the right to forfeit has been exercised. See note to *Cross* v. *Carson* (Ind.), 44 Am. Dec. 754; *Chalker* v. *Chalker*, 1 Conn. 79, 6 Am. Dec. 206; *Spear* v. *Fuller*, 8 N. H. 174, 28 Am. Dec. 391; *Thompson* v. *Thompson*, 9 Ind. 323, 68 Am. Dec. 638: *O'Brien* v. *Wagner*, 94 Mo. 93, 7 S. W. 19, 4 Am. St. Rep. 362; *Preston* v. *Bosworth*, 153 Ind. 458, 55 N. E. 224; 74 Am. St. Rep. 313; *Hubbard* v. *Hubbard*, 97 Mass. 188, 93 Am. Dec. 75; *Langley* v. *Chapin*, 134 Mass. 82; *Schulenberg* v. *Harriman*, 21 Wall 44, 22 L. Ed. 551; *Little Falls, etc., Co.* v. *Belin*, 69 Minn. 253, 72 N. W. 69; *Bonniwell* v. *Madison*, 107 Ia. 85, 77 N. W. 530; *Robinson* v. *Ingram*, 126 N. C. 327, 35 S. E. 612; *Houston, etc., R. Co.* v. *Compress Co.*; 23 Tex. Civ. App. 441, 56 S. W. 367; *Lewis* v. *Lewis*, 74 Conn. 630, 51 Atl. 854, 92 Am. St. Rep. 240.

"As to the mode of exercise of the right to enforce a forfeiture, the common law required in order to divest an estate of freehold (unless the grantor was already in possession at the time of the breach) an entry on the land, in order that the estate, which had vested by entry and livery of seisin, should be divested by the equal notoriety of entry and the resumption of that seisin. 2 Min. Ins. (4th ed.) 267; note to *Cross* v. *Carson* (Ind.), 44 Am. Dec. 755. But in modern practice, the forfeiture is usually enforced by the action of ejectment; and in order to bring this action

no actual entry is required at common law, and it is dispensed with by the provisions of the statutory action. *Rush* v. *Rock Island,* 97 U. S. 693, 24 L. Ed. 1101; *Cowell* v. *Springs Co.,* 100 U. S. 55, 25 L. Ed. 547; *Plumb* v. *Tubbs,* 41 N. Y. 442; *Cornelius* v. *Ivins,* 26 N. J. Law, 376; *Bouvier* v. *Baltimore, etc., R. Co.,* 65 N. J. Law 313, 47 Atl. 772, *Ritchie* v. *Kansas, etc., R. Co.,* 55 Kan. 36, 39 Pac. 718; *Sioux City, etc., R. Co.* v. *Singer,* 49 Minn. 301, 51 N. W. 905, 15 L. R. A. 751, 32 Am. St. Rep. 554; *Ruddick* v. *St. Louis, etc., R. Co.,* 116 Mo. 25, 22 S. W. 499, 38 Am. St. Rep. 570; *Johnston* v. *Hargrove,* 81 Va. 118; *Bowyer* v. *Seymour,* 13 W. Va. 12; *Martin* v. *Ohio R. Co.,* 37 W. Va. 349, 16 S. E. 589." The learned author then proceeds to cite and to quote in full section 2796 of the Code of 1904 (sec. 5530, Code 1919), which in Virginia expressly provides for the enforcement of the forfeiture by an action of ejectment. And in section 281 and the notes thereto, he clearly shows that in a case like this the breach cannot be availed of in equity.

The remedy at law is adequate and complete. The forfeiture, as we have seen, is not self-executing, and the title remains in the grantee until the grantor takes appropriate action to have himself reinvested with it; but a judgment in ejectment in his favor will accomplish the purpose as fully as a decree in equity cancelling the deed and declaring the revesting of the title. The complainant is asking for nothing more in this case, and a court of equity could do nothing more for him, than he can secure by an action at law. His counsel insists that the court has jurisdiction, in order to cancel the deed and put the parties *in statu quo,* and relies upon such cases as *Epperson* v. *Epperson,* hereinafter referred to, as authority for this proposition. The principle invoked and the authorities relied upon in this connection, however, cannot be made to apply to this case. A judgment in ejectment in favor of the plaintiff would

in effect cancel the deed as to the three lots in question, revest title in the granter, and place the parties in the precise condition which they would occupy if the prayer of the bill in this case were granted.

The case of *People's Pleasure Park Co.* v. *Rohleder,* 109 Va. 439, 61 S. E. 794, 63 S. E. 981, relied upon by the appellee as sustaining the jurisdiction in equity, plainly has no such effect. The question here involved was not dealt with in that case. The injunctive relief prayed for might perhaps have given jurisdiction to equity, and thus laid the foundation for a decree enforcing the forfeiture as an incident to such relief, if the bill had alleged facts showing a breach of the condition (Graves' Notes on Real Property, sec. 280). The jurisdictional question was possibly hinted at in the opinion, but if so it was laid to one side, and the demurrer to the bill was sustained and all relief denied on the ground that the allegations failed to show that the alleged condition had been violated.

[10] The general rule, of course, well understood, is that the plaintiff in ejectment must be clothed with the legal title when he brings his suit. As already pointed out, however, the settled practice and the statute in Virginia, fixes such an action as the appropriate remedy for the enforcement of a forfeiture for breach of a condition subsequent, notwithstanding the fact that the estate remains in the vendee until the forfeiture is consummated.

[11] The bill is not framed or designed to remove a cloud from the title, and there is no contention here that it was presented upon any such theory. We would treat it as such on our own motion, if we could, and thus avoid the jurisdictional question, but the complainant has neither legal nor equitable title, and therefore does not fall within the class of persons who may bring a suit to quiet title, either under the original equitable doctrine governing such suits, or under the terms of the former or present statute

on the subject found in section 3058 of the Code of 1904, or section 6248 of the Code of 1919. Until the consummation of the forfeiture, the grantor in a case like this has nothing but a right of action. *Ruch* v. *Rock Island*, 97 U. S. 693, 24 L. Ed. 1101, and other authorities cited *supra.*

The only purpose of this suit is to enforce the forfeiture. There is no element in the case giving rise to equitable jurisdiction on other grounds. The controversy does not belong to any of the exceptional classes, hereinafter mentioned, in which courts of equity will aid in the enforcement of forfeitures. The sole question is, can the court be called on to exercise its equity jurisdiction to divest the estate for breach of a condition which in law may be made to defeat it?

[12] The rule is thus stated by Mr. Pomeroy: "It is well settled and familiar doctrine that a court of equity will not interfere on behalf of the party entitled thereto and enforce a forfeiture, but will leave him to his legal remedies, if any, even though the case might be one in which no equitable relief would be given to the defaulting party against the forfeiture." 1 Pomeroy's Eq. (2d ed.), sec. 459.

In 16 Cyc., p. 80, it is said: "As already indicated, the jurisdiction to relieve against penalties and forfeitures is but one manifestation of the attitude of equity on the subject. The rule is practically absolute that it will not lend its aid affirmatively to enforce either a penalty or a forfeiture. * * * The few apparent exceptions to the rule * * are cases either controlled by, or at least attributed to, other countervailing equities."

In *Livingston* v. *Tompkins*, 4 Johns. Chy., 415, 8 Am. Dec. 598, Chancellor Kent, after reviewing some of the decisions on the subject, reduced the discussion to this statement: "The general principle is that 'equity will not assist in the recovery of a penalty or forfeiture when the plaintiff may proceed at law to recover it,' and the rule has been again

and again repeated, and it is the common language of the books that in no case (unless under extraordinary circumstances) will a forfeiture, or the divesting of an estate, be assisted in a court of equity."

In the case of *Wheeling, etc., R. R. Co. v. Triadelphia,* 58 W. Va. 487, 52 S. E. 499, 4 L. R. A. (N. S.) 321, it is said: "Never to declare or enforce a forfeiture or divest an estate or title for violation of a condition subsequent is an invariable rule of equity if there is a legal remedy. Under such circumstances a court of equity utterly declines to touch the case, and leaves the party to his legal remedies."

In the earlier West Virginia case of *Craig v. Hukill,* 37 W. Va. 520, 16 S. E. 363, the court said (Brannon, J., delivering the opinion) : "Affirmative relief against penalties and forfeitures was one of the springs or fountains of equitable jurisdiction, and the jurisdiction was very early exercised; and it would be going in the very opposite direction and acting contrary to essential principles to affirmatively enforce a forfeiture. The elementary books on equitable jurisprudence state the rule as almost an axiom that equity never enforces a penalty or forfeiture. 2 Story Eq. Jur., sec. 1319; 1 Pom. Eq. Jur., sec. 459; Bisp. Eq., sec. 181; Beach Mod. Eq. Jur. sec. 1013. Mr. Pomeroy, in 1 Pom. Eq. Jur., section 460, says that the rule is without exception, and I confess my search has led me to the same conclusion."

It will be observed that in the case last cited, the West Virginia court carried the rule further than our own court went in *Laurel Creek Co. v. Browning,* 99 Va. 528, 39 S. E. 156. The bill in each of these cases prayed for partition, and the West Virginia court declined to take jurisdiction, notwithstanding that feature of the bill, whereas the Virginia court assumed jurisdiction on that ground. The two cases, however, are entirely in harmony on the proposition that a court of equity will never actively lend its aid to en-

force a forfeiture where that is the only ground of jurisdiction.

In Bisham's Principles of Equity (9th ed.), sec. 181, p. 313, the author says: "It is well settled that a court of equity will not lend its aid actively to enforce a forfeiture. A chancellor will not lift his hand to aid a litigant in enforcing a forfeiture. Thus in *Oil Creek Railroad Co.* v. *The Atlantic and Great Western Railroad Co.*, 57 Pa. 65, a bill was filed to enforce the forfeiture of a lease granted by the complainants to the defendants, on the ground that the latter had forfeited their right to the same by their failure to build a road within the time prescribed, in accordance with the express provisions of the lease. The court was distinctly asked to enforce what had been agreed upon by the parties should be a forfeiture. But the prayer of the bill was refused upon the express ground that a court of equity will lend never its assistance in the enforcement of a forfeiture, but will leave the parties to their legal remedies."

[13]   The text last above cited on page 314 contains this further statement: "In some cases, however, the enforcement of a forfeiture may be regarded in equity with favor," citing the cases of *Laurel Creek Co.* v. *Browning, supra,* and *Brown* v. *Vandergrift,* 80 Pa. 142.

In *Laurel Creek Co.* v. *Browning,* Judge Whittle, speaking for this court, said: "The general doctrine is admitted that equity does not favor penalties and forfeitures, and will not ordinarily lend its active aid to enforce them, but will leave the parties to pursue their legal remedies. Nevertheless, in this State the rule is well established that when a court of equity acquires jurisdiction of a cause for any purpose, it will retain it and do complete justice between the parties, enforcing, if necessary, legal rights and applying legal remedies to accomplish that end. Especially is this true of suits for partition where by express provision of the

statute a court of equity 'may take cognizance of all questions of law affecting the legal title that may arise in any proceeding.' " And in that case the court did enforce a forfeiture, but only because it had acquired jurisdiction on other proper grounds.

In the case of *Brown* v. *Vandergrift, supra,* the decision was confined to a certain type of oil leases with reference to which the Pennsylvania and other courts seem to have established an exceptional class of equity jurisdiction. In that case, however, the court expressly recognized the general doctrine that equity abhors and will not enforce a forfeiture. (See also, in this immediate connection, 10 R. C. L., p. 337, and note 13.)

The cases of *Cowan* v. *Radford Iron Co.,* 83 Va. 547, 3 S. E. 120, and *Shenandoah Land Co.* v. *Hise,* 92 Va. 238, 23 S. E. 303, while they do not discuss the question, in the result indicate a tendency to recognize a similar exception in Virginia as to mining leases.

There is still another class of cases, and these are strongly relied upon by the appellee, in which a court of equity will take cognizance of and give effect to conditions subsequent. This class involves conveyances providing for the support of the grantor or third persons by the grantee. It is held in many jurisdictions, including Virginia, that equity may properly assume jurisdiction in order to give complete relief in cases of this character. A sufficient illustration of this class in Virginia is found in *Epperson* v. *Epperson, supra.* The jurisdictional question was very briefly disposed of in that case as follows: "We have no difficulty in disposing of the objection raised by J. H. C. Epperson to the jurisdiction of a court of equity in this case. The original bill partakes of the nature of a suit for specific performance; and, beside, the amended bill seeks injunctive relief against irreparable damage to the freehold, which in itself affords undoubted ground for equitable jurisdiction." From the

opinion as a whole, however, and from the cases of *Wampler* v. *Wampler,* 30 Gratt. (71 Va.) 454, and *Lowman* v. *Crawford,* 99 Va. 688, 40 S. E. 17, it is clear that in regard to deeds for support and maintenance, whether the provisions therein be treated as covenants or conditions, the Virginia doctrine is that equity will ordinarily assume jurisdiction because the peculiar nature of the transaction and the situation of the parties render the remedy at law inadequate. Graves' Notes on Real Prop., sec. 261 and note; 7 Va. Law Reg. 555, note.

We are of opinion that the court erred in overruling the demurrer to the bill. Having reached this conclusion, we need not pass upon the remaining assignments of error.

[14] The case was disposed of in the lower court before section 6084 of the Code became effective, providing for the transfer of causes from the equity to the law side of the court, and *vice versa;* but under section 6365 of the Code it is our duty now to enter such order as shall seem right and proper. We shall accordingly sustain the demurrer to the bill and reverse the decree complained of, but remand the cause to the lower court with instructions to transfer the same to the law side for the appropriate amendment of pleadings and other proceedings in conformity with the provisions of said section 6084. The costs in this court will be awarded to the appellant as the party substantially prevailing.

*Reversed.*